1 | EUDEEN Y. CHANG (Bar No. 211721)
2 | echang@jmbm.com
3 | MONICA Q. VU (Bar No. 216352)
4 | mvu@jmbm.com
5 | JEFFER MANGELS BUTLER & MITCHELL LLP
6 | 3 Park Plaza, Suite 1100
7 | Irvine, California 92614
8 | Telephone: (949) 623-7200
9 | Facsimile: (949) 623-7202

8 | Attorneys for Plaintiff TIGER BAY VILLAGE
9 | CORPORATION

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| TIGER BAY VILLAGE CORPORATION, a Canadian company, | CV13-8837BRO(ASx) |
|---|---|
| Plaintiff, | **CASE NO.** |
| v. | **COMPLAINT:** |
| YIHE CORPORATION, a California Corporation, STEVEN CHEN, an individual, and DOES 1 to 10 inclusive, | **(1) GOODS SOLD AND DELIVERED;** |
| Defendant. | **(2) OPEN BOOK ACCOUNT;** |
| | **(3) BREACH OF CONTRACT; AND** |
| | **(4) APPOINTMENT OF A RECEIVER AND INJUNCTIVE RELIEF** |

PRINTED ON
RECYCLED PAPER
OC 7384993v1

- 1 -     Complaint

1  Plaintiff Tiger Bay Village Corporation ("Plaintiff") complains against Yihe

2  Corporation ("Yihe"), Steven Chen, and Does 1 through 10 (collectively, hereinafter

3  referred to as "Defendants") seeking: (1) the recovery of outstanding amounts owed

4  by Defendants under the terms of that certain written Amended and Restated

5  Assignment of Rights and Claims; and (2) the appointment of receiver and injunctive

6  relief against Defendant Yihe. This Court has subject matter jurisdiction pursuant to

7  28 U.S.C. § 1332 and 28 U.S.C. §§ 2201(a) and 2202.

8  <u>PARTIES</u>

9  1.  Plaintiff is, and at all relevant times was, a corporation existing under the

10  laws of Canada, with its principal place of business in Vancouver, Canada.

11  2.  Plaintiff is informed and believes that defendant Yihe is, and at all

12  relevant times was, a corporation organized and existing under the laws of the State

13  of California, doing business in the County of Los Angeles, with its principal place of

14  business in Pasadena, California.

15  3.  Plaintiff is informed and believes that defendant Steven Chen is, and at

16  all relevant times was, an individual residing and conducting business in the County

17  of Los Angeles.

18  4.  Plaintiff does not know the true names and capacities, whether

19  individual, corporate, associate or otherwise of the defendants Does 1 through 10,

20  inclusive. Such defendants are, therefore sued herein by fictitious names. Plaintiff is

21  informed and believes, and thereon alleges, that each such fictitious defendant was in

22  some way responsible for, participated in or contributed to the matters and things of

23  which Plaintiff complains herein, and in some fashion has legal responsibility

24  therefor. When the true names of such fictitious defendants and, as appropriate, their

25  respective interest in said property or their responsibility for, participation in and

26  contribution to the matters and things herein alleged are ascertained by Plaintiff,

27  Plaintiff will seek leave to amend this Complaint to set forth the same.

28

JMBM | Jeffer Mangels Butler & Marmarou

1    5.    Plaintiff is informed and believes, and on that basis alleges, that at all

2    relevant times, Defendants, and each of them, were acting as agents, servants,

3    employees, joint venturers, alter egos, or representatives of each other, and were

4    acting within the full course and scope of their agency, employment and joint

5    venture with the full knowledge, consent, permission, acquiescence and ratification,

6    either express or implied, of each of the other defendants in performing the acts

7    alleged in this Complaint.

8                          JURISDICTION AND VENUE

9    6.    This Court has jurisdiction over this Complaint pursuant to 28 U.S.C. §

10   1332(a)(1) because the amount in controversy exceeds $75,000 and is between

11   citizens of different states.

12   7.    Venue is proper within this judicial district under 28 U.S.C. § 1391, in

13   that a substantial part of the events giving rise to Plaintiff's claims arose in this

14   District.  Defendant Yihe is a California corporation, with its headquarters in

15   Pasadena, California.

16                          GENERAL ALLEGATIONS

17   8.    Qingdao Hairong Foodstuff ("QHF") is Chinese company in the

18   business of selling and exporting frozen seafood products.  Plaintiff alleges on

19   information and belief that defendant Chen owns QHF and defendant Yihe.

20   9.    Plaintiff alleges on information and belief that at all times relevant

21   hereto, QHF sold and continues to sell seafood products to Yihe on an open book

22   account and upon an agreement by Yihe to pay for same at agreed upon prices.

23   Plaintiff alleges on information and belief that for the last several years and based on

24   Yihe's request and orders, QHF delivered to Yihe seafood products on an open book

25   account for which Yihe was and is obligated to pay QHF.  Plaintiff alleges on

26   information and belief that as a result of such transactions, Yihe is currently indebted

27   to QHF in an amount of at least $12 million USD ("the Yihe Debt").

28

JMBM | Jeffer Mangels Butler & Marmarou

PRINTED ON
RECYCLED PAPER
OC 7384993v1

1     10.    On or about June 13, 2013, QHF and an individual named Hai Rong

2  Wang entered into a loan agreement (the "Loan Agreement") whereby Wang loaned

3  to QHF an amount no less than $4 million USD, plus applicable interest, which debt

4  is due and owing and has not been paid (the "QHF Debt"). Chen executed a personal

5  guaranty promising to repay the QHF Debt in the event QHF defaulted, a copy of

6  which is attached hereto as Exhibit "A" and incorporated herein by this reference (the

7  "Personal Guaranty").

8     11.    On September 30, 2013, Wang, as assignee, and QHF, as assignor,

9  entered into that certain written Assignment of Rights and Claims whereby QHF

10  assigned to Wang all its rights and interests in the Yihe Debt up to an amount of not

11  less than $4 million plus accrued interest (the "QHF Assignment").

12     12.    On November 15, 2013, Wang as assignor, and Plaintiff as assignee,

13  entered into that certain written Amended and Restated Assignment of Rights and

14  Claims (the "Agreement"), whereby Wang assigned to Plaintiff all her rights and

15  interests in the QHF Assignment, QHF Debt, Personal Guaranty, and Loan

16  Agreement. The Agreement expressly assigned Plaintiff the right to enforce the

17  terms of the QHF Assignment and Loan Agreement, as well as to collect on the QHF

18  Debt in lieu of Wang. A copy of the Agreement is attached hereto as Exhibit "B" and

19  is incorporated herein by this reference.

20     13.    Plaintiff has fulfilled all of its obligations pursuant to the terms of the

21  Agreement.

22     14.    Defendant Yihe has defaulted on its obligations to repay the Yihe Debt,

23  and thus, Plaintiff seeks to enforce the terms of the Agreement as a result of same.

24     15.    Defendant Yihe has failed to cure its default and remains in default for

25  failing to pay the Yihe Debt. Although a demand was made by Plaintiff as assignee

26  of the Yihe Debt, defendant Yihe has failed and refused, and continues to fail and

27  refuse to pay the amounts owing, which amounts to at least $4 million.

28

JMBM | Jeffer Mangels
Butler & Marmarou

PRINTED ON
RECYCLED PAPER
OC 7384993v1

1    16.    Defendant Chen has defaulted on the Guaranty by failing to repay the

2    QHF Debt upon default by QHF.

3

4    ## FIRST CLAIM FOR RELIEF

5    ### FOR GOODS SOLD AND DELIVERED

6    (Against Defendants Yihe and Does 1-6, inclusive)

7    17.    Plaintiff repeats and re-alleges each of the prior allegations in this

8    Complaint as set forth above.

9    18.    Within the last four years, defendant Yihe became indebted to Plaintiff

10   (by assignment from QHF) in the sum of at least $4 million and up to $12 million for

11   goods sold and delivered to defendant Yihe.

12   19.    Plaintiff has repeatedly demanded payment from defendant Yihe. The

13   last demand was made on November 14, 2013.

14   20.    No payment has been made by defendant Yihe to Plaintiff, and there is

15   now owing the sum of at least $4 million and up to $12 million.

16   21.    Plaintiff alleges on information and belief that the contract on which this

17   action is based is a contract on a book account. Section 337a of the California Code

18   of Civil Procedure provides that in the event legal action is taken to enforce

19   collection, the prevailing party on the contract is entitled to recover reasonable

20   attorney's fees.

21   ## SECOND CLAIM FOR RELIEF

22   ### FOR OPEN BOOK ACCOUNT

23   (Against Defendants Yihe and Does 1-6, inclusive)

24   22.    Plaintiff repeats and re-alleges each of the prior allegations in this

25   Complaint as set forth above.

26   23.    Within the last four years, defendant Yihe became indebted to Plaintiff

27   (by assignment from QHF) on an open book account for money due in the sum of at

28   least $4 million for goods sold and delivered by QHF to defendant Yihe at its special

JMBM   Jeffer Mangels
       Butler & Marmaro LLP

PRINTED ON
RECYCLED PAPER
OC 7384993v1

1   instance and request and for which defendant Yihe agreed to pay at least the above
2   sum.

3       24.    Neither the whole nor any part of the above sum has been paid, although
4   a demand therefore has been made, and there is now due, owing, and unpaid the sum
5   of at least $4 million.

6       25.    Plaintiff alleges in information and belief that the contract on which this
7   action is based is a contract on a book account. Section 337a of the California Code
8   of Civil Procedure provides that in the event legal action is taken to enforce
9   collection, the prevailing party on the contract is entitled to recover reasonable
10   attorney's fees.

THIRD CLAIM FOR RELIEF

FOR BREACH OF CONTRACT

(Against Defendants Chen and Does 5-10, inclusive)

14       26.    Plaintiff repeats and re-alleges each of the prior allegations in this
15   Complaint as set forth above.

16       27.    Pursuant to the terms of the Personal Guaranty, Chen was to repay to
17   Wang the QHF Debt. Wang has assigned the right to collect this debt to Plaintiff.

18       28.    Plaintiff (through Wang) has fulfilled all of its obligations pursuant to
19   the terms of the Personal Guaranty.

20       29.    Plaintiff has made multiple demands, both orally and in writing, that
21   Defendant pay all the outstanding amounts owing under the Personal Guaranty, but
22   Defendants have failed and refused, and continue to fail and refuse, to pay such
23   amounts.

24       30.    Defendants breached their obligations under the Personal Guaranty by
25   failing to, among other things, timely paying the above-referenced outstanding
26   amounts to Plaintiff.

27       31.    As a direct and proximate result of Defendants' breach of the agreement,
28   Plaintiff has been damaged in an amount exceeding the jurisdictional minimum of

this Court to be proven at trial, but which totals at least $4 million plus interest.

## FOURTH CLAIM FOR RELIEF

### FOR APPOINTMENT OF RECEIVER AND FOR INJUNCTIVE RELIEF

(Against Defendants Yihe and Does 1-10, inclusive)

32.     Plaintiff repeats and re-alleges each of the prior allegations in this Complaint as set forth above.

33.     Defendant Yihe's business is currently being operated by a court-appointed receiver, James Wong. Attached hereto as Exhibit "C" is a true and correct copy of the court order appointing Wong as receiver. Plaintiff alleges on information and belief that pursuant to such appointment, Mr. Wong is tasked with repaying all of Yihe's creditors, including those based outside of the United States.

34.     Plaintiff is informed and believes, and on that basis alleges, that Chen concurs that a receiver is the best option to pay down Yihe's bona fide creditors in the USA, Canada and China, in an orderly manner.

35.     As a result of the foregoing and for the same reasons that Wong has already been appointed as defendant Yihe's receiver, Plaintiff requests that a receiver also be appointed and/or that Wong remain as the receiver for Yihe to manage Yihe's business and all of its equipment, assets, inventory, personnel, personal property and real property (collectively, the "Property") pursuant to Federal Rules of Civil Procedure 66 and Local Rule 66-1 *et seq.*

36.     Good cause exists for appointment of a receiver because Plaintiff alleges on information and belief that, prior to Wong's appointment, Chen allowed Yihe to be controlled and operated by another creditor located in China.

37.     If a receiver is not appointed, Yihe's assets and property will be irreparably devalued, and Plaintiff will be irreparably harmed. Further, Plaintiff may be unable to recover any money damages from Yihe as Yihe may already be

1    insolvent or nearing insolvency.

2        38.    Plaintiff has no other adequate remedy at law to enforce its rights arising

3    from the Agreement or any of the agreements related thereto. It is impractical and

4    impossible for Plaintiff to enjoy the rights granted to it under the Agreement without

5    the appointment of a receiver who has the power and authority to take possession of,

6    manage, operate, protect, preserve and maintain, and exercise any other right of

7    defendant Yihe over the Property. Harm to Plaintiff by denial of appointment of a

8    receiver would outweigh injury to any parties opposing such appointment.

9        39.    Plaintiff's interests sought to be protected will, in fact, be well-served by

10   receivership. Accordingly, a receiver should be appointed and granted the general

11   powers and duties of a court-appointed receiver.

12       40.    Plaintiff also seeks a preliminary injunction and permanent injunction

13   against defendant Yihe, and its respective agents, from interfering with the receiver's

14   performance of any and all acts authorized by this Court. Unless an injunctive order

15   is issued, enjoining and restraining defendant Yihe, and its respective agents,

16   partners, managers, employees, assignees, successors, and representatives of each of

17   the foregoing, Plaintiff will be irreparably harmed because defendant Yihe is no

18   longer preserving and protecting the Property. By reason thereof, Plaintiff has no

19   plain, adequate or speedy remedy at law and will suffer irreparable damage, injury,

20   and harm. Plaintiff therefore requests that the Court grant the injunctive relief sought

21   herein.

22                                    **PRAYER**

23       WHEREFORE, Plaintiff prays that judgment be entered in this action against

24   Defendants as follows:

25                        **ON THE FIRST CLAIM FOR RELIEF:**

26       1.    For compensatory damages in the amount of $4,000,000.00 plus

27   prejudgment interest to be established by proof at trial;

28

1  2. For general and special damages in an amount to be determined at time
2 of trial;

3       **ON THE SECOND CLAIM FOR RELIEF:**

4  1. For compensatory damages in the amount of $4,000,000.00 plus
5 prejudgment interest to be established by proof at trial;

6  2. For general and special damages in an amount to be determined at time
7 of trial;

8       **ON THE THIRD CLAIM FOR RELIEF:**

9  1. For compensatory damages in the amount of $4,000,000.00 plus
10 prejudgment interest to be established by proof at trial;

11  2. For general and special damages in an amount to be determined at time
12 of trial;

13       **ON THE FOURTH CLAIM FOR RELIEF:**

14  1. For a receiver to be appointed to take possession of the Property to
15 manage, conserve and protect it;

16  2. For an order that defendant Yihe deliver possession of the Property and
17 the revenue therefrom to the receiver;

18  3. Pending the appointment of a receiver, issuance of a temporary
19 restraining order, enjoining and restraining defendant Yihe and any of its agents,
20 employees, counsel or representatives from disbursing, paying out or otherwise
21 disposing of any revenue of the Property; and

22  4. For an order requiring the sequestration of all revenue from the Property.

23       **ON ALL CLAIMS FOR RELIEF:**

24  1. For interest at the maximum legal rate;

25  2. For attorneys' fees as permitted by law, equity or contract;

26  3. For costs of suit incurred herein; and

27  4. For such other and further relief as the Court may deem just and proper.

28

1    DATED:  November 27, 2013          JEFFER MANGELS BUTLER & MITCHELL
2                                        LLP

3                                        By: _____
4                                        MONICA Q. VU
5                                        Counsel for Creditor TIGER BAY VILLAGE
                                         CORPORATION
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit "A"

00/00/20    12:13    FAX 2152493590    NATIONWIDE LEGAL    12

GUARANTY AGREEMENT

This Guaranty Agreement ("Guaranty"), dated as of September 10, 2013, is executed and delivered by STEVEN CHEN (陈络强), an individual and citizen of the United States of America (together with his successors and assigns, "Guarantor"), in favor of WANG HAI RONG (王海荣), an individual and citizen of People's Republic of China (together with its successors and assigns, "Lender"), and in light of the following:

A.    Qingdao Hairong Foodstuff, a corporation formed under the laws of the People's Republic of China ("PRC") ("Borrower"), and Lender have previously entered into that certain Loan Agreement dated July 5, 2013 (the "Loan Agreement"), pursuant to which Lender made a loan to Borrower in the original principal amount of the equivalent of RMB $24,000,000 (the "Loan"), which Loan matured on July 8, 2013 (PRC time). At maturity, the unpaid principal balance of the Loan was not less than the equivalent of US $4,000,000. Guarantor previously guaranteed repayment of the Loan pursuant to that certain guaranty agreement to repay (无限连带偿还责任的保证书) dated July 4, 2013 (PRC time) in accordance with or as permitted by applicable PRC law (the "PRC Guaranty"). Guarantor also agreed to repay the Loan through that certain Settlement Agreement (和解协议书) dated August 2, 2013 (PRC time) in the action brought by Lender against Guarantor in Qingdao City Court (青岛市中院)

B. Borrower and Lender are negotiating the terms of a possible extension of the term of the Loan or a forbearance agreement with respect to the Loan, and Lender has required, as a condition of such extension or forbearance, among other things, that Guarantor execute and deliver this Guaranty of the Loan.

C. In order to induce Lender to extend the term of the Loan or forbearance with respect to the Loan, in each case upon and subject to such terms and conditions as Lender shall require, and in consideration thereof, and in consideration of any other financial accommodations heretofore or hereafter extended by Lender to Borrower, whether pursuant to the Loan Agreement or otherwise, Guarantor has agreed to guarantee the payment and performance of all Guaranteed Obligations (as hereinafter defined).

D Guarantor will derive a substantial benefit, directly and indirectly, from the extension or forbearance to be granted by Lender to or for the account of Borrower as herein contemplated.

NOW, THEREFORE, FOR VALUABLE CONSIDERATION, the receipt and sufficiency of which are hereby acknowledged, Guarantor hereby agrees, in favor of Lender, as follows:

1.  Definitions and Construction.

(a) Definitions.    As used in this Guaranty, the term "Guaranteed Obligations" means any and all obligations, indebtedness, or liabilities of any kind or character

1

owed by Borrower to Lender, in each case arising out of or in connection with the Loan Agreement and all other instruments, agreements and documents evidencing, securing and supporting the Loan (the Loan agreement and all such other instruments, agreements and documents, collectively, "Loan Documents"), including all such obligations, indebtedness, or liabilities, whether for principal, interest (including any interest which, but for the application of the provisions of the U.S. Bankruptcy Code, would have accrued on such amounts), premiums, reimbursement obligations, fees, costs, expenses (including, attorneys' fees required to be paid pursuant to the Loan Documents), or indemnity obligations, whether heretofore, now, or hereafter made, incurred, or created, whether voluntarily or involuntarily made, incurred, or created, whether secured or unsecured (and if secured, regardless of the nature or extent of the security), whether absolute or contingent, liquidated or unliquidated, determined or indeterminate, whether Borrower is liable individually or jointly with others, and whether recovery is or hereafter becomes barred by any statute of limitations or otherwise becomes unenforceable for any reason whatsoever, including any act or failure to act by Lender.

(b) **Construction**. Unless the context of this Guaranty clearly requires otherwise, references to the plural include the singular, references to the singular include the plural, and the term "including" is not limiting. The words "hereof," "herein," "hereby," "hereunder," and other similar terms refer to this Guaranty as a whole and not to any particular provision of this Guaranty. Any reference herein to any of the Loan Documents includes any and all alterations, amendments, extensions, modifications, renewals, or supplements thereto or thereof, as applicable. Neither this Guaranty nor any uncertainty or ambiguity herein shall be construed or resolved against Lender or Guarantor, whether under any rule of construction or otherwise. On the contrary, this Guaranty has been reviewed by Guarantor, Lender, and their respective counsel, and shall be construed and interpreted according to the ordinary meaning of the words used so as to fairly accomplish the purposes and intentions of Lender and Guarantor.

2. **Guaranteed Obligations**. Guarantor hereby irrevocably and unconditionally guarantees to Lender, as and for Guarantor's own debt, until final and indefeasible payment thereof has been made, payment of the Guaranteed Obligations, in each case when and as the same shall become due and payable, whether at maturity, pursuant to a mandatory prepayment requirement, by acceleration, or otherwise; it being the intent of Guarantor that the guaranty set forth herein shall be a guaranty of payment and not a guaranty of collection. This Guaranty supplements and is in addition to the Original guaranty and any and all other or subsequent guaranties from Guarantor. Lender's rights under all guaranties shall be cumulative; this Guaranty shall not affect or invalidate any such other future guaranties; and Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other future unterminated guaranties.

3. **Continuing Guaranty**. This Guaranty includes Guaranteed Obligations arising under successive transactions continuing, compromising, extending, increasing, modifying, releasing, or renewing the Guaranteed Obligations, changing the interest rate, payment terms, or other terms and conditions thereof, or creating new or additional Guaranteed Obligations after prior Guaranteed Obligations have been satisfied in whole or in part. Guarantor hereby absolutely, knowingly, unconditionally, and expressly waives and agrees not to

2

assert any right it has under Section 2815 of the California Civil Code, or otherwise, to revoke this Guaranty as to future indebtedness. If such a revocation is effective notwithstanding the foregoing waiver, Guarantor acknowledges and agrees that (a) no such revocation shall be effective until written notice thereof has been received by Lender, (b) no such revocation shall apply to any Guaranteed Obligations in existence on such date (including, any subsequent continuation, extension, or renewal thereof, or change in the interest rate, payment terms, or other terms and conditions thereof), (c) no such revocation shall apply to any Guaranteed Obligations made or created after such date to the extent made or created pursuant to a legally binding commitment of Lender in existence on the date of such revocation, (d) no payment by Guarantor, Borrower, or from any other source, prior to the date of such revocation shall reduce the maximum obligation of Guarantor hereunder, and (e) any payment by Borrower or from any source other than Guarantor, subsequent to the date of such revocation, shall first be applied to that portion of the Guaranteed Obligations as to which the revocation is effective and which are not, therefore, guaranteed hereunder, and to the extent so applied shall not reduce the maximum obligation of Guarantor hereunder.

    4.  **Performance Under This Guaranty**. If Borrower fails to make any payment of any Guaranteed Obligations on or before the due date thereof, Guarantor immediately shall cause such payment to be made.

    5.  **Primary Obligations**. This Guaranty is a primary and original obligation of Guarantor and is an absolute, unconditional, and continuing guaranty of payment which shall remain in full force and effect without respect to future changes in conditions, including any change of law. Guarantor agrees that it is directly, and jointly and severally with any other guarantor of the Guaranteed Obligations, liable to Lender, that the obligations of Guarantor hereunder are independent of the obligations of Borrower or any other guarantor, and that a separate action may be brought against Guarantor whether such action is brought against Borrower or any other guarantor or whether Borrower or any such other guarantor is joined in such action. Guarantor agrees that Guarantor's liability hereunder shall be immediate and shall not be contingent upon the exercise or enforcement by Lender of whatever remedies it may have against Borrower or any other guarantor, or the enforcement of any lien or realization upon any security Lender may at any time possess. Guarantor agrees that any release which may be given by Lender to Borrower or any other guarantor shall not release Guarantor. Guarantor consents and agrees that Lender shall be under no obligation (under Sections 2899 or 3433 of the California Civil Code or otherwise) to marshal any assets of Borrower or any other guarantor in favor of Guarantor, or against or in payment of any or all of the Guaranteed Obligations.

    6.  **Waivers**.

        (a) Guarantor absolutely, unconditionally, knowingly, and expressly waives:

        (i)  (1) notice of acceptance hereof; (2) notice of any loans or other financial accommodations made or extended under the Loan Documents or the creation or existence of any Guaranteed Obligations; (3) notice of the amount of the

3

OC\03\167341

Guaranteed Obligations, subject, however, to Guarantor's right to make inquiry of Lender to ascertain the amount of the Guaranteed Obligations at any reasonable time; (4) notice of any adverse change in the financial condition of Borrower or of any other fact that might increase Guarantor's risk hereunder; (5) notice of presentment for payment, demand, protest, and notice thereof as to any instruments among the Loan Documents; (6) notice of any unmatured event of default or event of default under the Loan Agreement; and (7) all other notices (except if such notice is specifically required to be given to Guarantor hereunder or under any Loan Document to which Guarantor is a party) and demands to which Guarantor might otherwise be entitled.

(ii) Guarantor's right, under Sections 2845 or 2850 of the California Civil Code, or otherwise, to require Lender to institute suit against, or to exhaust any rights and remedies which Lender has or may have against, Borrower or any third party, or against any collateral for the Guaranteed Obligations provided by Borrower, Guarantor, or any third party. In this regard, Guarantor agrees that it is bound to the payment of all Guaranteed Obligations, whether now existing or hereafter accruing, as fully as if such Guaranteed Obligations were directly owing to Lender by Guarantor. Guarantor further waives any defense arising by reason of any disability or other defense (other than the defense that the Guaranteed Obligations shall have been fully and finally performed and indefeasibly paid) of Borrower or by reason of the cessation from any cause whatsoever of the liability of Borrower in respect thereof.

(iii) (1) any rights to assert against Lender any defense (legal or equitable), set-off, counterclaim, or claim which Guarantor may now or at any time hereafter have against Borrower or any other party liable to Lender; (2) any defense, set-off, counterclaim, or claim, of any kind or nature, arising directly or indirectly from the present or future lack of perfection, sufficiency, validity, or enforceability of the Guaranteed Obligations or any security therefor; (3) any defense Guarantor has to performance hereunder, and any right Guarantor has to be exonerated, provided by Sections 2819, 2822, or 2825 of the California Civil Code, or otherwise, arising by reason of: the impairment or suspension of the rights or remedies of Lender against Borrower; the alteration by Lender of the Guaranteed Obligations; any discharge of Borrower's obligations to Lender by operation of law as a result of any intervention or omission by Lender; or the acceptance by Lender of anything in partial satisfaction of the Guaranteed Obligations; (4) the benefit of any statute of limitations affecting Guarantor's liability hereunder or the enforcement thereof, and any act which shall defer or delay the operation of any statute of limitations applicable to the Guaranteed Obligations shall similarly operate to defer or delay the operation of such statute of limitations applicable to Guarantor's liability hereunder.

(b) Guarantor absolutely, unconditionally, knowingly, and expressly waives any defense arising by reason of or deriving from (i) any claim or defense based upon an election of remedies by Lender including any defense based upon an election of remedies by Lender under the provisions of Sections 580a, 580b, 580d, and 726 of the California Code of Civil Procedure or any similar law of California or any other jurisdiction; or (ii) any election by

4

DR 1343472v2

Lender under Bankruptcy Code Section 111)(b) to limit the amount of, or any collateral securing, its claim against the Borrower.

(c) Pursuant to California Civil Code Section 2856:

Guarantor waives all rights and defenses arising out of an election of remedies by the creditor, even though that election of remedies, such as a nonjudicial foreclosure with respect to security for a guaranteed obligation, has destroyed Guarantor's rights of subrogation and reimbursement against Borrower by the operation of Section 580d of the California Code of Civil Procedure or otherwise.

Guarantor waives all rights and defenses that Guarantor may have because any of the Guaranteed Obligations are secured by real property. This means, among other things:

(1) The Lenders may collect from Guarantor without first foreclosing on any real or personal property collateral pledged by Borrower.

(2) If Lender forecloses on any real property collateral pledged by Borrower:

(A) The amount of the Guaranteed Obligations may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price.

(B) Lender may collect from Guarantor even if such Lender, by foreclosing on the real property collateral, has destroyed any right Guarantor may have to collect from Borrower.

This is an unconditional and irrevocable waiver of any rights and defenses Guarantor may have because Borrower's Obligations are secured by real property. These rights and defenses include, but are not limited to, any rights or defenses based upon Section 580a, 580b, 580d, or 726 of the California Code of Civil Procedure.

If any of the Guaranteed Obligations at any time are secured by a mortgage or deed of trust upon real property, Lender may elect, in its sole discretion, upon a default with respect to the Guaranteed Obligations, to foreclose such mortgage or deed of trust judicially or nonjudicially in any manner permitted by law, before or after enforcing this Guaranty, without diminishing or affecting the liability of Guarantor hereunder except to the extent the Guaranteed Obligations are repaid with the proceeds of such foreclosure. Guarantor understands that (a) by virtue of the operation of California's antideficiency law applicable to nonjudicial foreclosures, an election by Lender nonjudicially to foreclose such a mortgage or deed of trust probably would have the effect of impairing or destroying rights of subrogation, reimbursement, contribution, or indemnity of Guarantor against Borrower or other guarantors or sureties, and (b) absent the waiver given by Guarantor herein, such an election would prevent Lender from enforcing this Guaranty against Guarantor. Understanding the foregoing, and

5

CA74166250

understanding that Guarantor is hereby relinquishing a defense to the enforceability of this Guaranty, Guarantor hereby waives any right to assert against Lender any defense to the enforcement of this Guaranty, whether denominated "estoppel" or otherwise, based on or arising from an election by Lender nonjudicially to foreclose any such mortgage or deed of trust. Guarantor understands that the effect of the foregoing waiver may be that Guarantor may have liability hereunder for amounts with respect to which Guarantor may be left without rights of subrogation, reimbursement, contribution, or indemnity against Debtor or other guarantors or sureties. Guarantor also agrees that the "fair market value" provisions of Section 580a of the California Code of Civil Procedure shall have no applicability with respect to the determination of Guarantor's liability under this Guaranty.

(d) Until such time as all of the Guaranteed Obligations have been fully, finally, and indefeasibly paid in full in cash: (i) Guarantor hereby postpones any right of subrogation Guarantor has or may have as against Borrower with respect to the Guaranteed Obligations; (ii) Guarantor hereby postpones any right to proceed against Borrower or any other Person, now or hereafter, for contribution, indemnity, reimbursement, or any other suretyship rights and claims, whether direct or indirect, liquidated or contingent, whether arising under express or implied contract or by operation of law, which Guarantor may now have or hereafter have as against Borrower with respect to the Guaranteed Obligations; and (iii) Guarantor also hereby postpones any right to proceed or seek recourse against or with respect to any property or asset of Borrower.

(e) WITHOUT LIMITING THE GENERALITY OF ANY OTHER WAIVER OR OTHER PROVISION SET FORTH IN THIS GUARANTY, GUARANTOR HEREBY ABSOLUTELY, KNOWINGLY, UNCONDITIONALLY, AND EXPRESSLY WAIVES AND AGREES NOT TO ASSERT ANY AND ALL BENEFITS OR DEFENSES ARISING DIRECTLY OR INDIRECTLY UNDER ANY ONE OR MORE OF CALIFORNIA CIVIL CODE SECTIONS 2799, 2808, 2809, 2810, 2815, 2819, 2820, 2821, 2822, 2825, 2839, 2845, 2848, 2849, AND 2850.

7. **Releases.** Guarantor consents and agrees that, without notice to or by Guarantor and without affecting or impairing the obligations of Guarantor hereunder, Lender may, by action or inaction:

(a) compromise, settle, extend the duration or the time for the payment of, or discharge the performance of, or may refuse to or otherwise not enforce the Loan Documents;

(b) release all or any one or more parties to any one or more of the Loan Documents or grant other indulgences to Borrower in respect thereof;

(c) amend or modify in any manner and at any time (or from time to time) any of the Loan Documents; or

(d) release or substitute any other guarantor, if any, of the Guaranteed Obligations, or enforce, exchange, release (by action or inaction), or waive any security for the

6

UC 73469724

Guaranteed Obligations (including, the collateral referred to in Section 6 hereof) or any other guaranty of the Guaranteed Obligations, or any portion thereof.

**8. No Election.** The Lender shall have the right to seek recourse against Guarantor to the fullest extent provided for herein, and no election by Lender to proceed in one form of action or proceeding, or against any party, or on any obligation, shall constitute a waiver of the right of Lender to proceed in any other form of action or proceeding or against other parties unless Lender has expressly waived such right in writing. Specifically, but without limiting the generality of the foregoing, no action or proceeding by Lender under any document or instrument evidencing the Guaranteed Obligations shall serve to diminish the liability of Guarantor under this Guaranty except to the extent that Lender finally and unconditionally shall have realized indefeasible payment by such action or proceeding.

**9. Indefeasible Payment.** The Guaranteed Obligations shall not be considered indefeasibly paid for purposes of this Guaranty unless and until all payments to Lender are no longer subject to any right on the part of any person, including Borrower, Borrower as a debtor in possession, or any trustee (whether appointed under the Bankruptcy Code or otherwise) of Borrower's assets to invalidate or set aside such payments or to seek to recoup the amount of such payments or any portion thereof, or to declare same to be fraudulent or preferential. Upon such full and final indefeasible payment of the Guaranteed Obligations whether by Guarantor or Borrower, Lender shall not have any obligation whatsoever to transfer or assign its interest in the Loan Documents to Guarantor. In the event that, for any reason, any portion of such payments to Lender is set aside or restored, whether voluntarily or involuntarily, after the making thereof, then the obligation intended to be satisfied thereby shall be revived and continued in full force and effect as if said payment or payments had not been made, and Guarantor shall be liable for the full amount Lender are required to repay plus any and all costs and expenses (including attorneys' fees) paid by Lender in connection therewith.

**10. Financial Condition of Borrower.** Guarantor represents and warrants to Lender that Guarantor is currently informed of the financial condition of Borrower and of all other circumstances which a diligent inquiry would reveal and which bear upon the risk of nonpayment of the Guaranteed Obligations. Guarantor further represents and warrants to Lender that Guarantor has read and understands the terms and conditions of the Loan Agreement and the other Loan Documents. Guarantor hereby covenants that Guarantor will continue to keep informed of Borrower's financial condition, the financial condition of other guarantors, if any, and of all other circumstances which bear upon the risk of nonpayment or nonperformance of the Guaranteed Obligations.

**11. Payments; Application.** All payments to be made hereunder by Guarantor shall be made in lawful money of the United States of America at the time of payment, shall be made in immediately available funds, and shall be made without deduction (whether for taxes or otherwise) or offset. All payments made by Guarantor hereunder shall be applied as follows: first, to all costs and expenses (including attorneys' fees) incurred by Lender and Lender in enforcing this Guaranty or in collecting the Guaranteed Obligations; second, to all accrued and

7

OC-72xxx02-3

unpaid interest, premium, if any, and fees owing to Lender constituting Guaranteed Obligations; and third, to the balance of the Guaranteed Obligations.

12. **Attorneys' Fees and Costs.**  Guarantor agrees to pay, on demand, all reasonable attorneys' fees and all other costs and expenses which may be incurred by Lender in connection with the enforcement or interpretation of this Guaranty (including those brought relating to proceedings pursuant to the Bankruptcy Code) or in any way arising out of, or consequential to the protection, assertion, or enforcement of the Guaranteed Obligations (or any security therefor), whether or not suit is brought, and including all such fees and costs incurred by Lender in connection with an appeal of any judgment, order or award in any such action or proceeding.

13. **Indemnification.**  Guarantor agrees to indemnify Lender and hold Lender harmless against all obligations, demands, or liabilities asserted by any party and against all losses in any way suffered, incurred, or paid by Lender as a result of or in any way arising out of, following, or consequential to transactions between Lender and Borrower under or in connection with the Loan Agreement or other Loan Documents (excluding any obligations, demands, or liabilities arising out of the gross negligence or willful misconduct of Lender).

14. **Notices.**  All notices or demands by Guarantor, on the one hand, or Lender, on the other hand, to the other relating to this Guaranty shall be in writing and either personally served or sent by registered or certified mail, postage prepaid, return receipt requested, overnight delivery service, or by telefacsimile, and shall be deemed to be given for purposes of this Guaranty on the earlier of the date of actual receipt or three days after the deposit thereof in the mail.  Unless otherwise specified in a notice sent or delivered in accordance with the provisions of this section, such writing shall be sent, if to Guarantor, at Guarantor's address set forth on the signature page hereof, and if to Lender, then as follows:

陈绍强, 青岛市市北区华阳路5号4号楼一单元1301 (Steven Chen, Qingdao City, North Huayang Road, Building 4, Unit 5, 1301).

15. **Cumulative Remedies.**  No remedy under this Guaranty or under any Loan Document is intended to be exclusive of any other remedy, but each and every remedy shall be cumulative and in addition to any and every other remedy given hereunder or under any Loan Document, and those provided by law or in equity.  No delay or omission by Lender to exercise any right under this Guaranty shall impair any such right nor be construed to be a waiver thereof.  No failure on the part of Lender to exercise, and no delay in exercising, any right hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right.

16. **Books and Records.**  Guarantor agrees that Lender's books and records showing the account between Lender and Borrower shall be admissible in any action or proceeding and shall be binding upon Guarantor for the purpose of establishing the items therein set forth and shall constitute prima facie proof thereof.

8

OC 789322vl

17. <u>Severability of Provisions</u>.  Any provision of this Guaranty which is prohibited or unenforceable under applicable law, shall be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof.

18. <u>Entire Agreement; Amendments</u>.  This Guaranty constitutes the entire agreement between Guarantor and Lender pertaining to the subject matter contained herein.  This Guaranty may not be altered, amended, or modified, nor may any provision hereof be waived or noncompliance therewith consented to, except by means of a writing executed by both Guarantor and Lender.  Any such alteration, amendment, modification, waiver, or consent shall be effective only to the extent specified therein and for the specific purpose for which given.  No course of dealing and no delay or waiver of any right or default under this Guaranty shall be deemed a waiver of any other, similar or dissimilar right or default or otherwise prejudice the rights and remedies hereunder.

19. <u>Successors and Assigns</u>.  The death of Guarantor shall not terminate this Guaranty.  This Guaranty shall be binding upon Guarantor's heirs, executors, administrators, representatives, successors and assigns and shall inure to the benefit of the successors and assigns of Lender; provided, however, Guarantor shall not assign this Guaranty or delegate any of Guarantor's duties hereunder without the prior written consent of Lender.  Any assignment without the consent of Lender shall be absolutely void.  In the event of any assignment or other transfer of rights by Lender, the rights and benefits herein conferred upon such transferor shall automatically extend to and be vested in such assignee or other transferee.

20. <u>Married Guarantor</u>.  By executing this Guaranty, Guarantor, if married, agrees that recourse may be had against Guarantor's separate and community property for all of Guarantor's obligations under this Guaranty.

21. <u>Choice of Law and Venue</u>.  THE VALIDITY OF THIS GUARANTY, ITS CONSTRUCTION, INTERPRETATION, AND ENFORCEMENT, AND THE RIGHTS OF GUARANTOR AND LENDER, SHALL BE DETERMINED UNDER, GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH THE INTERNAL LAWS OF THE STATE OF CALIFORNIA.  GUARANTOR HEREBY AGREES THAT ALL ACTIONS OR PROCEEDINGS ARISING IN CONNECTION WITH THIS GUARANTY SHALL BE TRIED AND DETERMINED ONLY IN THE STATE AND FEDERAL COURTS LOCATED IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, OR, AT THE SOLE OPTION OF LENDER, IN ANY OTHER COURT IN WHICH LENDER NK SHALL INITIATE LEGAL OR EQUITABLE PROCEEDINGS AND WHICH HAS SUBJECT MATTER JURISDICTION OVER THE MATTER IN CONTROVERSY.  GUARANTOR HEREBY EXPRESSLY WAIVES ANY RIGHT IT MAY HAVE TO ASSERT THE DOCTRINE OF FORUM NON CONVENIENS OR TO OBJECT TO VENUE TO THE EXTENT ANY PROCEEDING IS BROUGHT IN ACCORDANCE WITH THIS SECTION.

22. <u>Jury Trial Waiver and Reference</u>.  The Parties each hereby knowingly, voluntarily, and intentionally waive any right (whether arising under the Constitution of

9

OC 73853241

the United States, the State of California, or of any other state, or under any foreign jurisdiction, under any statutes regarding or rules of civil procedure applicable in any state or federal or foreign legal proceeding, under common law, or otherwise) to demand or have a trial by jury of any claim, demand, action or cause of action arising under the Loan Documents or in any way connected with or related or incidental to the discussions, dealings or actions of such persons or either of them (whether oral or written) with respect thereto, or to the transactions related thereto, in each case whether now existing or hereafter arising, and whether sounding in contract or tort or otherwise; and each of the Parties hereby agrees and consents that any such claim, demand, action, or cause of action shall be decided by trial court without a jury, and that either Party may file an original counterpart or a copy of this Guaranty with any court as written evidence of its waiver of right to trial by jury. Each of the Parties acknowledges and agrees that such Party has received full and sufficient consideration for this provision (and each other provision of each other related document to which it is a Party) and that this provision is a material inducement for Lender's accepting this Guaranty. By waiving a jury trial, the Parties intend that all claims and disputes be resolved by a judge acting without a jury in order to avoid the delays, expense and risk of mistaken interpretations which each Party acknowledges to be greater with jury trials than with non-jury trials.

(a)     Judicial Reference.  If the waiver of jury trial set forth above is not enforceable under applicable state law or otherwise, then the Parties hereby agree that all claims under the Loan Documents, including any and all questions of law or fact relating thereto shall, at the written request of either Party, be determined by Reference ("Reference") pursuant to section 638 et seq. of the California Code of Civil Procedure, as the same may be amended from time to time.

(b)     Selection or Appointment of Referee.  The Parties shall select a single neutral referee who shall be a retired state or federal judge.  In the event the Parties cannot agree upon a referee, the referee shall be appointed by the court.

(c)     Conduct of Reference.  The Reference shall be conducted pursuant to California law.  The referee shall determine all issues relating to the applicability, interpretation, legality or enforceability of the Loan Documents.  The referee shall report a statement of decision to the court.  The Parties shall equally bear the fees and expenses of the referee, unless the referee otherwise provides in the statement of decision.

(d)     Provisional Remedies; Self Help.  No provision of this Section shall limit the right of either Party to (i) exercise self-help remedies including, without limitation, set-off or, in the case of Lender, any nonjudicial foreclosure of any deed of trust and non-judicial enforcement or exercise of rights under any assignment of leases, or (ii) obtain or oppose provisional or ancillary remedies from a court of competent jurisdiction before, after or during the pendency of any Reference.  The exercise of, or opposition to, any such remedy does not waive the right of any Party to a Reference pursuant to this Guaranty.

10

OC 738465.1

00/00/2013  12:19:27 FAX  2132495590          NATIONWIDE LEGAL                                    22

(e)     No Decision By Jury.  The Parties acknowledge that if a referee is selected or appointed to determine claims, then such claims shall not be determined by a jury.

INITIALS:          Borrower _____     Lender _____

23.  Waivers, Consents.  Guarantor warrants and agrees that each of the waivers and consents set forth herein is made after consultation with legal counsel and with full knowledge of its significance and consequence, with the understanding that events giving rise to any defense or right waived may diminish, destroy, or otherwise adversely affect rights which Guarantor otherwise may have against Borrower, Lender, or others, or against any collateral, and that, under the circumstances, the waivers and consents herein given are reasonable and not contrary to public policy or law.  If any of the waivers or consents herein is determined to be unenforceable under applicable law, such waivers and consents shall be effective to the maximum extent permitted by law.

IN WITNESS WHEREOF, Guarantor has executed and delivered this Guaranty as of the date set forth in the first paragraph hereof.

STEVEN CHEN (陈绍强).

Guarantor's Address For Notice: 青岛市市北区华阳路5号4号楼一单元1301(Qingdao City, North Huayang Road, Building 4, Unit 5, 1301).

11

OC 736162v1

ACKNOWLEDGED, AND AGREED:

Lender:

By: WANG HAI RONG (王海荣)

# Exhibit "B"

## AMENDED AND RESTATED ASSIGNMENT OF RIGHTS AND CLAIMS

This Amended and Restated Assignment of Rights and Claims (this "Assignment") supercedes and restates the Assignment of Rights and Claims dated October 31, 2013 between the parties hereto, and is made and entered into as of November 15, 2013, by WANG HAI RONG, an individual and citizen of People's Republic of China ("Assignor"), to and in favor of TIGER BAY VILLAGE CORPORATION (Assignee" and, together with Assignor, hereinafter sometimes referred to individually as a "Party" and collectively as "Parties"), with respect to the following facts:

      A.    Pursuant to that certain Assignment of Rights and Claims dated September 30, 2013 (the "Initial Assignment") between Assignor and Qingdao Hairong Foodstuff ("QHF"), a corporation formed under the laws of the People's Republic of China ("PRC"), Assignor acquired by assignment all rights and claims of QHF against Yihe Corporation, a California corporation ("Yihe"), arising out of that certain debt owed by Yihe to QHF relating to the sale and purchase of seafood inventory, including, without limitation, all indebtedness and rights to payment now and hereafter due and owing to QHF from Yihe (collectively, the "Assigned Debt"). The Initial Assignment was entered into in support of the indebtedness therein described owing by QHF to Assignor and ultimately owing to Assignee (the "QHF Debt").

      B.    Assignor now desires to enter into this Assignment in order to provide for the assignment and transfer to Assignee, for purposes of collection and not in satisfaction of the QHF Debt, of all of the following rights and claims (collectively, the "Assigned Rights"): All right, title and interest of Assignor in and to the QHF Debt and Assigned Debt, and all rights of Assignor to receive payment thereof, and all rights, remedies, powers, privileges and authorities granted to or possessed by Assignor pursuant to the Initial Assignment and arising out of all agreements, instruments and documents evidencing, securing or supporting the QHF Debt and/or Yihe's indebtedness and other obligations thereunder or by operation of law, in respect of the Assigned Debt, including, without limitation, the unrestricted right to enforce, collect, settle and compromise the QHF and Assigned Debt.

NOW THEREFORE, FOR VALUABLE CONSIDERATION, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

      1.    Assignment.   Assignor hereby irrevocably assigns, transfers and sets over to Assignee, for purposes of collection and not in satisfaction of any indebtedness or obligation owing by Assignor to Assignee, all of Assignor's right, title and interest in and to the Assigned Rights, and in all proceeds thereof and recoveries thereon. The foregoing assignment and transfer is presently effective and unconditional, subject to and reserving in favor of Assignee the first priority security interest therein as hereinafter provided. Assignor shall immediately notify Assignee in writing of Assignor's receipt of any payments or other property from Yihe or QHF or otherwise on account of the Assigned Debt, and Assignor shall be deemed to have received and shall hold all such payments and property in trust for the sole benefit of Assignee, and Assignor shall immediately turn over to Assignee all such payments and property, including payments and other property in kind if requested by Assignee. Assignor shall fully cooperate with Assignee in the enforcement and exercise by Assignee of its rights and remedies against Yihe and QHF, and shall execute and deliver to Assignee all such written assignments,

1

confirmations and other documents as may be requested by Assignee in order to confirm and carry out the foregoing assignment and transfer and to facilitate the efficient, uninterrupted and orderly exercise and enforcement of all such rights, claims and remedies as herein contemplated. Assignor hereby appoints Assignee as Assignor's attorney in fact, with power of substitution, to execute, deliver and file all such assignments, notices and other documents for and in the name of Assignor, and on Assignor's behalf, in order to carry out the provisions of this Section, should Assignor fail to perform her obligations hereunder in a timely manner as herein provided. The Parties agree that said power of attorney is and shall be deemed to be coupled with an interest and irrevocable. Assignee may at any time, upon written notice to Assignor, release, assign and quitclaim, without recourse or warranty, to Assignor or Assignor's successors or assigns, all or any portion of the rights and interests of Assignee in all unrealized or unrecovered payments, recoveries and proceeds of the Assigned Rights.

2. Application of Proceeds of Assigned Rights. All proceeds received, collected or recovered by Assignee shall be applied: (i) first, to pay all accrued unpaid interest due under the QHF Debt and all fees, charges, costs and expenses incurred by Assignee in the exercise and enforcement of its rights under this Assignment or otherwise in respect of the Assigned Rights and the enforcement of its rights and remedies in respect of the Assigned Debt, and (ii) second, to repay or reduce the indebtedness owing under the QHF Debt, or in such other order and manner determined by Assignee in its sole discretion. Assignee's records of all such payments, recoveries and proceeds shall be presumed complete and accurate, absent manifest error.

3. Security Interest. Without limiting the absolute nature of the foregoing assignment, Assignor hereby grants to Assignee a continuing security interest in and lien upon the Assigned Rights, now existing and hereafter arising or coming into existence, and in which Assignor now has rights or at any time hereafter acquires any rights or interests now owned by all proceeds thereof, to secure the full and timely payment and performance of all indebtedness and obligations under the QHF Debt and all obligations of Assignor under this Assignment. Assignor shall execute and deliver to Assignee, and to any and all third parties as Assignee shall require, all such notices, additional security agreements, assignments, pledge agreements, and amendments thereof, as and when Assignee shall require in order to perfect and maintain Assignee's rights and security interests under this Assignment. Assignor hereby irrevocably appoints Assignee as the attorney in fact for Assignor, with power of substitution which may be exercised by Assignee in its discretion, to execute and deliver any and all such notices, additional security agreements, assignments, pledge agreements, and amendments. Said power of attorney is deemed coupled with an interest and is, therefore, irrevocable. For all purposes of this Assignment, Assignee shall have all of the rights and shall be entitled to exercise and enforce all remedies and powers of a secured party as provided in the California Uniform Commercial Code (the "Code"), to the extent applicable to the Assigned Rights, and as otherwise provided by law.

4. Revivor. Notwithstanding any provision to the contrary herein contained, if any payment made upon or credited to the Assigned Debt pursuant to this Assignment is subsequently invalidated, determined to be fraudulent or preferential, voided, set aside and/or required to be repaid to any trustee, receiver, assignee or any other party whether under the U.S. Bankruptcy Code, any state or federal law, common law or equitable cause or otherwise, in whole or in part, then to the extent thereof, the obligation or part thereof intended to be satisfied

OC 73951:15v1

2

thereby, and any and all security interests or liens securing the same, shall be revived, reinstated and continued in full force and effect as if said payment or payments had not originally been made by or for the account of or on behalf of Assignor.

5. Additional Conditions and Covenants of Assignor.

a. Assignor shall, at Assignee's option and at Assignor's sole cost and expense, take all steps necessary or appropriate, and as Assignee may otherwise reasonably request from time to time, to notify Yihe and QHF of the assignment of the Assigned Rights hereunder, and to direct and otherwise call upon Yihe and QHF to pay all Assigned Rights directly to Assignee pursuant to this Assignment.

b. Assignor shall not, without the prior written consent of Assignee, which consent Assignee may withhold in its sole and absolute discretion, voluntarily or involuntarily assign or transfer, pledge, encumber, modify, or otherwise dispose of or alter the terms of Assignor's rights and interests in the Assigned Rights, enter into any agreement to do any of the foregoing.

c. Assignor shall take all steps reasonably necessary or appropriate to facilitate and permit the exercise and enforcement by Assignee of the Assigned Rights.

d. Assignor shall fully and timely perform all of her obligations under and with respect to this Assignment, and shall pay and discharge all claims and obligations which may be or become a lien, encumbrance, levy, or charge upon or against the Assigned Rights, or any portion thereof or interest therein, or upon Assignee's rights or interests hereunder, and shall not suffer or permit any levy of attachment, execution, charging order, or other process against Assignor or the Assigned Rights. Assignor shall immediately notify Assignee in writing of the filing or serving upon Assignor of any such claim, obligation, lien, encumbrance, levy, or charge, except with respect to any such action taken directly by Assignee.

e. Assignor shall, at Assignor's sole expense, make available to Assignee, all of Assignor's original books and records relating to the Assigned Rights for the purpose of verifying compliance by Assignor with all covenants, conditions, representations, and warranties of Assignor pursuant to this Assignment, the Initial Assignment, and the Loan Agreement, and for making such copies thereof as Assignee shall require. Such examination may be conducted by employees or agents of Assignee, including independent accountants and auditors designated by Assignee.

6. Representations and Warranties. Assignor hereby represents and warrants to Assignee that:

a. Except for the Loan Agreement, Assignor is not in breach or default in the performance of her obligations under any other agreement pertaining to the Assigned Rights.

b. The Assigned Rights are freely transferable by Assignor, and Assignor has full power and authority to enter into this Assignment and to carry out the provisions of this Assignment, and all requisite and appropriate steps have been taken to obtain due authorization

and any required consents therefor.

    c. The Assigned Rights, and all rights to receive Assigned Rights, are and shall remain free and clear of all conflicting or adverse claims, liens, and encumbrances of any kind or description.

    d. Neither this Assignment, nor any act by any party as herein contemplated, shall constitute or result in a breach or default by Assignor under any other agreement to which Assignor is a party or is otherwise bound, or with respect to which the right to receive Assigned Rights, or any portion thereof or interest therein, is otherwise affected.

    e. Subject to the rights and interests of Assignee under this Assignment, Assignor is the sole owner of the Assigned Rights and has not assigned, pledged, encumbered, transferred, or granted a security interest in or to the Assigned Rights.

    f. This Assignment is not and shall not be subject to any option, preemptive right, negative covenant, or other restriction upon Assignor pursuant to any agreement.

    8.    No Assumption of Liability. By accepting the assignment hereunder, Assignee shall not be deemed to have assumed or agreed to assume any liability for debts and other obligations and liabilities of Assignor with respect to the Assigned Rights or any settlement, adjustment or disposition of Assigned Rights. Nothing contained in this Assignment, or in any action taken by Assignee to enforce this Assignment, shall subject Assignee to any claim, defense, or condition restricting the full benefit of the Assigned Rights and use of the Assigned Rights, or otherwise subject Assignee to any undertaking, warranty, or representation of Assignor with respect to the Assigned Rights.

    9.    Effect of Default. The assignment by Assignor of the Assigned Rights, and grant of security interest and lien as herein provided, shall remain in full force and effect for as long as Assignee so determines or until the QHF Debt has been indefeasibly paid in full, notwithstanding any default by Assignor in the performance of Assignor's obligations under this Assignment or the Loan Agreement other related loan documents. Assignee's rights and remedies hereunder are and shall remain cumulative and shall not be exclusive, and Assignee shall not be required to first enforce, exercise, or exhaust any of its rights or remedies under or with respect to this Assignment before taking any other enforcement action or exercise any other rights or remedies it may have under the above mentioned agreements, or any of them. Without limiting the generality of the foregoing, Assignee shall have the right, at its election, to foreclose upon, sell, or otherwise dispose of the Assigned Rights and acquire all rights, powers, authorities, and benefits of Assignor with respect to the Assigned Rights, whether by public or private sale or other disposition in accordance with applicable provisions of the Code, or acceptance of Assigned Rights in lieu of a disposition as provided in the Code, or a voluntary assignment in lieu of a sale, or other disposition.

    10. Modifications or Amendments. This Assignment and all documents pertaining to the Assigned Rights, and all other documents evidencing, securing and supporting the Assigned Rights constitute the entire agreement and understanding between the Parties with respect to the subject matter, and this Assignment may not be changed, waived, discharged or terminated



OC 1395115v1

4

王小捷

unless such change, waiver, discharge or termination is in writing signed by Assignor and Assignee.

11. <u>Attorneys' Fees and Related Costs</u>. Assignor further agrees to reimburse Assignee immediately and without demand for all reasonable and documented costs and expenses, including reasonable attorneys' fees, incurred by Assignee in any action or proceeding between Assignor and Assignee for the enforcement or interpretation of this Assignment, or otherwise incurred by Assignee as a consequence of a breach by Assignor of her obligations and representations under this Assignment, whether or not suit is filed, and any such costs and expenses incurred in any bankruptcy proceedings involving Assignor, and in any appeals and post-judgment collection proceedings. This attorneys' fees clause shall survive any termination or merger of this Assignment.

12. <u>Litigation Against Yihe or QHF By Assignee</u>. Assignor shall reimburse Assignee for all costs and expenses, including attorney's fees, incurred by Assignee in Assignee's collection efforts against Yihe and QHF, or either of them, whether or not suit is filed. Assignor understands and assumes the risks of the uncertain and unpredictable nature of litigation should it be commenced by Assignee against Yihe or QHF. Assignor understands and assumes the risks that such litigation may be influenced and impacted by foreseeable as well as unforeseeable events. Should Assignee commence an action for collection and/or related to this Assignment Agreement against Yihe or QHF and Yihe or QHF files any counterclaim or cross-complaint against Assignee, Assignor shall indemnify Assignee for same. Pending litigation by Assignee against Yihe or QHF, Assignor shall refrain from pursuing any litigation against Yihe or QHF in the United States. This standstill agreement by Assignor is a material term of this Assignment Agreement.

13. <u>Withdrawal From Litigation By Assignee</u>. In the event Assignee commences an action for collection and/or related to this Assignment against Yihe or QHF, Assignee has the absolute right to withdraw from such action. Upon Assignee's withdrawal, Assignor shall substitute alternative counsel of her own choosing.

14. <u>Agreement Binding on Successors and Assigns</u>. This Assignment shall be for the benefit of Assignee, and its successors and assigns, and shall bind the successors and assigns of Assignor.

15. <u>Assignee's Forbearance Does Not Constitute Waiver</u>. The rights and remedies of and authority granted to Assignee under this Assignment shall be in addition to all other rights and remedies granted to or reserved by Assignee under any other agreement between the Parties and that are granted by any statute or rule of law. No delay or omission on the part of Assignee, or its assignees, in exercising any right hereunder shall operate as a waiver of such right or remedy.

16. <u>Governing Law</u>. This Assignment shall be governed by and construed in accordance with the laws of the State of California.

17. <u>Notice</u>. All notices, demands, requests and other communications given or required to be given under this Assignment shall be in writing and must be mailed, telecopied, dispatched by commercial courier or delivered personally to the appropriate Party at the address set forth on

5

OC 7595115v1

the signature pages of this Assignment or at any other address as may be designated by it in a written notice sent to the other Party in accordance with this Section. If any notice, request, demand, direction or other communication required or permitted by this Assignment is given by mail it will be effective on the earlier of receipt or the fourth business day after deposit in the United States mail with first class or airmail postage prepaid; if given by telecopier, when sent; if dispatched by commercial courier, on the scheduled delivery date; or if given by personal delivery, when delivered.

18. Counterparts. This Assignment may be executed and delivered in two counterparts, each of which shall be deemed an original and both of which shall be one and the same agreement. Counterparts of said documents may also be executed and delivered by facsimile transmission or electronic mail.

19. Duty of Cooperation. Each of the Parties shall at all times fully cooperate with each other, and shall cause their respective agents and attorneys to cooperate, in a prompt and timely manner, in connection with the performance of all obligations of the Parties pursuant to this Assignment, and which may otherwise be necessary or appropriate to carry out and enforce the provisions of this Assignment. Assignor shall execute and deliver to Assignee all such documents, notices, and agreements (including agreements in recordable form) which Assignee shall reasonably require in order to establish, confirm, affirm, perfect, and secure all rights, interests, title, and benefits accruing to Assignee pursuant to this Assignment.

IN WITNESS WHEREOF, the Parties have executed this Assignment effective as of the day and year first above written.

*[Signatures of the Parties appear on the following page]*



6

OC7393115v1



"Assignor"

WANG HAI RONG

Address:

266061 Korea-China Business Centre
No.17 of Qinling Road, Laoshan District
Qingdao City, Shandong Province
China, Post code: 266061

"Assignee"

TIGER BAY VILLAGE CORPORATION

By: _____

Name: ___Cumfu Cheng___

Title: ___President___

Address:

100 Park Royal South, Suite 710
West Vancouver, Canada  V7T1A2

DC 7395:15\1

# Exhibit "C"

| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | **UNITED STATES DISTRICT COURT** |
| 11 | **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION** |
| 12 | |

| | | |
|---|---|---|
| 13 | RESOURCE ONE HOLDINGS, LLC, a Missouri limited liability company, | Case No.  CV13-6278 FFM |
| 14 | | Magistrate Judge: Hon. Frederick F. Mumm |
| 15 | Plaintiff, | |
| 16 | v. | [~~PROPOSED~~] ORDER APPOINTING RECEIVER AND |
| 17 | YIHE CORPORATION, a California corporation, | FOR ISSUANCE OF PRELIMINARY INJUNCTION |
| 18 | Defendants. | PURSUANT TO PARTIES' JOINT STIPULATION AND STIPULATED |
| 19 | | *EX PARTE* APPLICATION |

-1-

SMRH:409979353 1

1          Upon reading of the Stipulation of the Parties, Plaintiff's Complaint
2  and the pleadings filed in this action, it appears to the Court that this is a proper case
3  for the appointment of a receiver and for the issuance of a preliminary injunction
4  enjoining Defendant Yihe Corporation ("Defendant"), from interfering with the
5  duties of the receiver.

**THEREFORE, IT IS HEREBY ORDERED AS FOLLOWS:**

**ORDERS REGARDING RECEIVER**

8  **I.    APPOINTMENT OF RECEIVER**

9          James Wong (the "Receiver") shall be appointed as Receiver to take
10  possession, custody and control of Defendant's assets, tangible and intangible,
11  wherever located, including but not limited to Defendant's equipment, assets,
12  inventory, personnel, personal property and real property as described below.
13  Before performing his duties, the Receiver shall execute a receiver's oath. Within
14  seven business days of this appointment, the Receiver shall also post a bond from an
15  insurer in the sum of Ten Thousand Dollars ($10,000.00), conditioned upon the
16  faithful performance of the Receiver's duties. The Receiver's Bond and the Oath of
17  the Receiver may be filed by facsimile transmission and this Order shall become
18  effective upon the Court's receipt of such facsimile transmission provided, however,
19  that the Receiver replace the facsimiles with originals within seven business days of
20  filing.

21  **II.    COMPENSATION OF RECEIVER**

22          The Receiver shall charge no more than $350 per hour for his services
23  subject to adjustment after further notice pursuant to the notice procedure described
24  in Section 5 of this Order. Employees of the Receiver shall charge their usual
25  hourly rates for matters of this type.

26  **III.    POWERS AND DUTIES OF RECEIVER**

27          The Receiver shall have all the powers, duties and authority as are
28  provided by law, and shall operate, manage, control, conduct, care for, preserve, and

-2-

Case 2:13-cv-08837-RSWL-FFM Document 1 Filed 11/27/13 Page 35 of 50 Page ID #:56

Case 2:13-cv-07207-RSWL-FFM Document 1 Filed 09/30/13 Page 14 of 30 Page ID #:18
Case 2:13-cv-06278-FFM Document 10 Filed 09/04/13 Page 3 of 14 Page ID #:232

1 maintain all of Defendant's assets, tangible and intangible, wherever located,
2 including but not limited to, Defendant's equipment, assets, inventory, personnel,
3 personal property and real property (the "Property"). The Property together with
4 any revenues, profits, and proceeds thereof payable hereinafter are referred to as the
5 "Receivership Estate." In particular, though without limitation, the Receiver shall
6 have the following powers and responsibilities:

7       1.      The Receiver may notify all necessary local, state and federal
8 governmental agencies (including any taxing authorities), vendors, suppliers,
9 customers and other interested parties of the appointment of the Receiver and direct
10 them to send correspondence and monies to the Receiver rather than to Defendant.

11      2.      The Receiver shall collect any and all receivables, royalties, rents,
12 income, issues, and profits of the Receivership Estate. The Receiver shall have the
13 discretion to compromise, settle, make allowances respecting and otherwise manage
14 the collection of accounts and obligations receivable without further order of this
15 Court.

16      3.      All receivables, royalties, rents, income, issues, and profits
17 collected by the Receiver may be applied, in the Receiver's discretion, to the care,
18 management, preservation, and maintenance of the Receivership Estate and to pay
19 expenses and debts of the Receivership Estate. Receiver shall hold any excess monies
20 not expended for such purposes subject to further order of this Court. Receiver or any
21 party to this action may, from time to time and on due notice to all parties entitled
22 thereto, apply to this Court for orders instructing Receiver as to the disposition of the
23 royalties, rents, income, issues, and profits collected by Receiver.

24      4.      The Receiver may operate Defendant in the best interest of the
25 Receivership Estate, which may include expanding sales on a best efforts basis
26 through obtaining new customers and retention of existing customers obtaining
27 permits and approvals, liquidation of the assets or leasing of facilities or equipment.
28 Receiver may borrow funds for working capital purposes, including the payment of

-3-

SMRH:409979353.1

00/00/2013 12:19:27 FAX 2132499590    NATIONWIDE LEGAL

Case 2:13-cv-08837-RSWL-FFM   Document 1   Filed 11/27/13   Page 36 of 50   Page ID #:57    36

Case 2:13-cv-07207-RSWL-FFM   Document 1   Filed 09/30/13   Page 15 of 30   Page ID #:19
Case 2:13-cv-06278-FFM   Document 10   Filed 09/04/13   Page 4 of 14   Page ID #:233

1    its ordinary course debts, marketing and administrative expenses as may be required.
2    The Receiver may employ and pay (including employee state and federal taxes) or
3    terminate servants, agents, employees, managers, clerks, liquidators, auctioneers, and
4    accountants; may purchase materials, supplies, advertising, and other services at
5    ordinary and usual rates and prices using funds that shall come into the Receiver's
6    possession; may collect or compromise debts of the Receivership Estate; and may
7    incur the risks and obligations ordinarily incurred by owners, managers, and operators
8    of similar enterprises, which, in the Receiver's reasonable judgment, are necessary for
9    the operation of the Receivership Estate and Defendant's business.  No such risk or
10   obligation so incurred shall be the personal risk or obligation of Receiver but shall be
11   a risk or obligation of the Receivership Estate.

12         5.    The Receiver is authorized and empowered to execute and prepare
13   all documents and to perform all acts in the name of, or for the benefit of, Defendant
14   Yihe which are necessary or incidental to preserving, protecting, managing, operating
15   and/or controlling the Receivership Estate, including, but not limited to, the
16   following:

17         a.    Demand and receive all keys and passwords needed to
18   access all business premises used by Defendant or housing Defendant's property and
19   all books, records, accounts, ledgers, bank account data, documents of title, unpaid
20   bills in connection with the Receivership Estate.  Defendant and any of Defendant's
21   agents or employees having possession of such keys, accounts, records, documents,
22   books, papers, unpaid bills, passwords and software are directed to turn the same over
23   to the Receiver immediately.  Defendant and its agents and employees are hereby
24   further ordered to immediately forward to the Receiver all bills that they may receive
25   in the future in connection with the Receivership Estate;

26         b.    Sign authorizations, withdrawals, and information requests
27   as to all bank accounts of Defendant;

28

-4-

SMRH:409979353.1

00/00/2013 12:19:27 FAX 2132459950 NATIONWIDE LEGAL Case 2:13-cv-08837-RSWL-FFM Document 1 Filed 11/27/13 Page 37 of 50 Page ID #:58 37

Case 2:13-cv-07207-RSWL-FFM Document 1 Filed 09/30/13 Page 16 of 30 Page ID #:20
Case 2:13-cv-06278-FFM Document 10 Filed 09/04/13 Page 5 of 14 Page ID #:234

1          c.      Open or witness the opening of all mail addressed to

2 Defendant, and to sign for delivery or refusal of all packages or freight;

3          d.      Convey good and valid title in any sale of any Receivership

4 Estate assets and to sign any necessary documents to accomplish that purpose;

5          e.      Sign necessary documentation relating to the storage and

6 release from storage, or delivery of any inventory or other Receivership Estate assets;

7          f.      Apply for and obtain fees for any licenses, permits or

8 governmental approvals necessary to comply with the receivership obligations;

9          g.      In the ordinary course of business, enter into new contracts

10 or at his discretion, exercise Defendant's rights under existing contracts and

11 agreements concerning the Receivership Estate.

12          h.      Open one or more checking or savings accounts or both in a

13 bank or other financial institution insured by the FDIC for the deposit of monies

14 collected or received by the Receiver, and the Receiver shall have such authority to

15 write checks or direct that such checks be written on such account for the purpose of

16 making any payment required or permitted to be made hereunder by the Receivership

17 Estate and the Receiver shall use the taxpayer identification numbers of Defendant for

18 the purpose of opening such bank accounts and for conducting the Receivership

19 Estate's business;

20          i.      The Receiver may bring and prosecute all proper actions for

21 the collection of receivables due to the Receivership Estate, for the removal of any

22 unauthorized occupant, tenant or other persons from the Receivership Estate and to

23 bring, prosecute and defend all actions for the protection of the Receivership Estate or

24 to recover possession thereof; including, without limitation, actions to recover or set

25 aside fraudulent transfers.

26          j.      The Receiver shall take possession of and receive from all

27 depositories, banks, savings and loan associations, thrifts, brokerages, and otherwise,

28 any money on deposit in such institutions relating to the Receivership Estate, or

SMRH:409979353.1

Case 2:13-cv-07207-RSWL-FFM  Document 1  Filed 09/30/13  Page 17 of 30  Page ID #:21
Case 2:13-cv-06278-FFM  Document 10  Filed 09/04/13  Page 6 of 14  Page ID #:235

1   income accounts of the Receivership Estate, and may open or close any and all

2   monetary accounts, including bank checking, savings, money market, certificate of

3   deposit or brokerage accounts, and the receipt of Receiver of these funds shall

4   discharge any institutions from further responsibility for accounting for these funds

5   for which the Receiver shall give a receipt.

6          k.      The Receiver shall take possession of, succeed to, and

7   exercise Defendant's rights in and under all executory contracts, leases, sales

8   contracts, options or other agreements affecting the Receivership Estate.  The

9   Receiver shall take possession of the business premises of the Defendant and all

10  premises where Defendant has its inventory and personal property, including third-

11  party warehouses and cold storage facilities, wherever they may be located, to the

12  exclusion of Defendant and all other parties that do not have an interest in the

13  Receivership Estate.

14          6.      The Receiver may cancel, extend, modify, or enter into any

15  agreements, contracts or leases necessary or appropriate for the operation of the

16  Receivership Estate. Receiver may pay, collect, hold, or refund security deposits as

17  Receiver deems appropriate for the management and preservation of the Receivership

18  Estate;

19          7.      Receiver may borrow funds through the issuance of Receiver's

20  Certificates, with or without security without this Court's prior approval up to an

21  aggregate of $250,000.  In the event the Receiver determines to borrow funds in

22  excess of an aggregate of $250,00 he shall seek Court approval of same.

23          8.      Receiver shall have the authority to dispute or settle or litigate

24  any liens recorded (or threatened to be recorded) against the Receivership Estate.

25          9.      Use of Funds by Receiver: The Receiver shall pay only those

26  bills which are reasonable and necessary for the operation of the Receivership Estate

27  and shall allocate funds in the following order of priority:  (1) the costs and

28  expenses of operating the Receivership Estate including utilities, hazard and

-6-

SMRH:409979353.1

Case 2:13-cv-08837-RSWL-FFM  Document 1  Filed 11/27/13  Page 39 of 50  Page ID #:60

Case 2:13-cv-07207-RSWL-FFM  Document 1  Filed 09/30/13  Page 18 of 30  Page ID #:22
Case 2:13-cv-06278-FFM  Document 10  Filed 09/04/13  Page 7 of 14  Page ID #:236

1   workers' compensation insurance premiums related to the protection of the interests

2   of the Receivership Estate; and, (2) the fees and expenses incurred by the Receiver

3   in managing the Receivership Estate; provided, however, that Receiver shall not pay

4   payroll and any tax liabilities of Defendant arising prior to the inception of the

5   Receivership Estate, except that the Receiver has the discretion to pay (a) payroll

6   and federal or state employee withholdings arising from the pay period immediately

7   prior to the inception of the Receivership Estate and (b) sales taxes arising during

8   the quarter in which the Receiver is appointed.  The Receiver shall obtain the

9   Court's approval, after notice to appropriate parties, and ex parte if necessary in his

10   discretion, prior to making capital expenditures or payment of unsecured debt (other

11   than ordinary and necessary trade accounts payable of, among others, Plaintiff and

12   any accounts receivable) or payments other than those ordinarily and necessarily

13   incurred in the operation of the Receivership Estate.

14        10.   Tax Returns.  Receiver may elect to and has authority to file and

15   amend local, state and federal tax returns if necessary and prudent for the estate.  In

16   the event of a tax audit, Receiver may take action as he sees fit and prudent to

17   resolve the matter promptly with the taxing authorities.

18        11.   Employing Counsel.  Receiver is authorized to employ Buchalter

19   Nemer to advise on legal matters related to protecting and maximizing the estate,

20   without the need for prior court approval.  Buchalter Nemer may charge the

21   Receiver its normal hourly rate for matters of this type subject to annual

22   adjustments, which adjustments shall be approved after notice to the parties and a

23   hearing before the Court on this issue will be required only upon an objection.

24        12.   Bankruptcy.  If Defendant files a bankruptcy case during the

25   receivership, Plaintiff shall give notice of the bankruptcy case to the court, to all

26   parties, and the Receiver by the closing of the next business day after the day on

27   which Plaintiff receives notice of the bankruptcy filing.  If a Receiver receives

28

SMRH:409979353.1

1  notice that a bankruptcy has been filed and part of the bankruptcy estate includes

2  property that is subject to this order, the Receiver shall have the following duties:

3          a.    Turn over property if no relief from stay will be sought.

4  The Receiver shall immediately contact the party who obtained the appointment of

5  the Receiver and determine whether that party intends to move in the Bankruptcy

6  Court for an Order for (1) relief from the automatic stay, and (2) relief from the

7  Receiver's obligation to turn over the Receivership Estate (11 U.S.C. § 543). If the

8  party has no intention to make such a motion or motions, the Receiver shall

9  immediately turn over the Receivership Estate to the appropriate entity - either to

10  the trustee in bankruptcy if one has been appointed or, if not, to the debtor in

11  possession - and otherwise comply with the 11 U.S.C. § 543.

12          b.    Remain in Possession pending resolution. If the party who

13  obtained the receivership intends to seek relief immediately from both the automatic

14  stay and the Receiver's obligation to turn over the Receivership Estate, the Receiver

15  may remain in possession and preserve the Receivership Estate pending the ruling

16  on those motions (11 U.S.C. § 543(a)). The Receiver's authority to preserve the

17  Receivership Estate shall be limited as follows:

18          (1)    The Receiver may continue to collect rents and

19  other income;

20          (2)    The Receiver may make only those disbursements

21  necessary to preserve and protect the Receivership Estate;

22          (3)    The Receiver shall not execute any new leases or

23  other long term contracts; and

24          (4)    The Receiver shall do nothing that would effect a

25  material change in the circumstances of the Receivership Estate.

26          (5)    Turn over property if no motion for relief is filed

27  within 10 days after notice of the bankruptcy. If the party who obtained the

28  receivership fails to file a motion within 10 court days after his or her receipt of

-8-

SMRH:409979353.1

1   notice of the bankruptcy filing, the Receiver shall immediately turn over the

2   Receivership Estate to the appropriate entity - either to the trustee in bankruptcy if

3   one has been appointed or, if not, to the debtor in possession - and otherwise comply

4   with 11 U.S.C. § 543.

5         c.    Retain bankruptcy counsel. The Receiver may petition the

6   court to retain legal counsel to assist the Receiver with issues arising out of the

7   bankruptcy proceedings that affect the receivership.

8         d.    Failure to turn over Receivership Estate. A Receiver who

9   fails to turn over the Receivership Estate in accordance with this order shall not be

10   paid for time and expenses after the date the Receiver should have turned the

11   Receivership Estate over.

12   **IV.    RECEIVER NOT PERSONALLY LIABLE**

13         James Wong is acting solely in his capacity as Receiver and the debts

14   of the Receiver are solely the debts of the Receivership Estate. In no event shall

15   James Wong personally have any liability or obligations for the debts of the

16   Receiver and/or the Receivership Estate. Receiver shall be permitted and is hereby

17   authorized to contract with and work on property and other matters of Plaintiff; and

18   upon conclusion of this Receivership, Receiver may continue or commence new

19   work on all or any portion of the property constituting the Receivership Estate.

20   **V.    REPORTING**

21         To the extent feasible, the Receiver shall, within forty-five (45) days of

22   his qualification hereunder, file in this Action an inventory of all property and

23   accounts of which he shall have taken possession pursuant to this Order and shall

24   file periodic accountings thereafter.

25         1.    Monthly Accounting. The Receiver shall each month prepare

26   and serve on the parties, but not file, an accounting of the income and expenses

27   incurred in the administration of the Receivership Estate including the Receiver's

28   fees and expenses.

SMRH:409979353.1

1       2.    The Receiver may pay the Receiver's own fees and expenses

2  including that of his counsel only by the following alternate procedures:

3       a.    By serving on all parties a notice of intent to pay to which

4  no objection is served on the Receiver within 10 days of the date the notice is

5  served.

6       b.    By serving and filing a request for interim payment, which

7  the court then approves.

8       c.    By obtaining and filing an agreement among all the parties

9  approving the payment, which the court then approves.

10       d.    By filing the Receiver's final accounting and report, which

11  the court then approves.

12       3.    The Receiver shall not reimburse the Receiver for the Receiver's

13  general office administration expenses or overhead. These expenses include, for

14  example, office supplies and employee payroll, benefits, and taxes of the Receiver.

15       4.    Interim fees paid shall be subject to final review and approval by

16  the court. The court retains jurisdiction to award a greater or lesser amount as the

17  full, fair and final value of such services.

18       5.    The Receiver, or any party to this action, may from time to time,

19  and on due notice to all parties, make application to this Court for further orders

20  instructing said Receiver.

21

22       **PRELIMINARY INJUNCTION RE RECEIVER'S OPERATIONS**

23       **IT IS FURTHER ORDERED** that Defendant and any of its officers,

24  members, and managers, shall do as follows:

25       1.    Turnover of Assets:  Shall turn over to the Receiver the

26  possession and management of the Property and other property of the Receivership

27  Estate.

28

-10-

SMRH:409979353.1

00/00/2013 Case 2:13-cv-08837-RSWL-FFM Document 1 Filed 11/27/13 Page 43 of 50 Page ID #:64 43

Case 2:13-cv-07207-RSWL-FFM Document 1 Filed 09/30/13 Page 22 of 30 Page ID #:26
Case 2:13-cv-06278-FFM Document 10 Filed 09/04/13 Page 11 of 14 Page ID #:240

1       2.    Turnover of Licenses and Permits: Shall turn over to the

2 Receiver originals or copies of all documents in Defendant's possession which

3 pertain to all licenses, permits, and government approvals relating to the Property.

4       3.    Turnover of Taxpayer ID Number for Limited Purposes: Shall

5 immediately advise the Receiver of Defendant's Federal Taxpayer Identification

6 Number so that the Receiver may use such number for the following limited

7 purposes: (a) to establish bank accounts at any bank the Receiver deems appropriate

8 for the deposit of monies and funds collected and received in connection with his

9 administration of the Receivership Estate, provided that all funds on deposit are

10 insured by an agency of the United States Government; and (b) to use in connection

11 with any tax reporting as may be required by law.

12       4.    Notification of Insurance: Shall immediately advise the Receiver

13 as to the nature and extent of insurance coverage for the Property and for Defendant

14 and its operations. Defendant shall immediately name the Receiver as an additional

15 insured (as specified by Receiver) on the insurance policy(ies) for the period that the

16 Receiver shall be in possession of the Property and the Receivership Estate and any

17 premium therefore shall be borne and advanced by the Receivership Estate.

18 Defendant is prohibited from canceling, reducing or modifying any and all insurance

19 coverage currently in existence with respect to the Property or the Receivership

20 Estate. If there is insufficient insurance coverage, it is hereby ordered that the

21 Receiver shall have seven (7) working days to procure insurance, providing the

22 Receiver has funds available to do so, and during this period the Receiver shall not

23 be personally responsible for claims arising or for the procurement of insurance.

24       5.    Utilities For Receivership Estate: Any utility companies

25 providing service to the Receivership Estate, including communications, telephone,

26 electricity, gas, water, sewer, and garbage pickup or similar services, shall be

27 prohibited from discontinuing service to the Receivership Estate based upon any

28 unpaid bills incurred by Yihe. In addition, any utility companies providing service to

-11-

00/00/2015 Case 2:13-cv-08837-RSWL-FFM Document 1 Filed 11/27/13 Page 44 of 50 Page ID #:65   44

Case 2:13-cv-07207-RSWL-FFM   Document 1   Filed 09/30/13   Page 23 of 30   Page ID #:27
Case 2:13-cv-06278-FFM   Document 10   Filed 09/04/13   Page 12 of 14   Page ID #:241

1   the Receivership Estate shall be prohibited from requiring that the Receiver deposit
2   funds in advance as a condition of resuming any previously discontinued utility
3   service to the Receivership Estate.

4          6.      Postal Service:  The United States Postal Service ("USPS") shall
5   deliver any and all mail addressed to Defendant at any address as directed or
6   redirected by the Receiver.  Defendant shall be prohibited from making, and the
7   USPS shall not accept from Defendant, any change of address designations or
8   instructions contrary to those of the Receiver

9          7.      Agreements:  Shall turn over to the Receiver copies or originals
10  of all leases, licenses, or other agreements of any kind whatsoever in Defendant's
11  possession, whether currently in effect or lapsed, which relate or related to the
12  Property.

13         8.      Monies:  Shall turn over to the Receiver all monies or funds of
14  any type in the account or accounts of Defendant relating to the Property or the
15  Receivership Estate.

16         IT IS FURTHER ORDERED that pending further Order of this
17  Court, Defendant and any of its officers, members, and managers, shall not:

18         9.      Commit Waste:  Defendant shall not commit any waste of the
19  Property or any part thereof, or commit any act in violation of law, or remove,
20  transfer, encumber or otherwise dispose of any of the Property or any part thereof,
21  or any personal property or fixtures thereon.

22         10.     Collect Accounts Receivable:  Defendant shall not demand,
23  collect, receive, discount, or in any other way divert or use any of the accounts
24  receivable or other items included in the Property or the Receivership Estate.

25         11.     Interfere With Receiver:  Defendant shall not directly or
26  indirectly interfere in any manner with the discharge of the Receiver's duties under
27  this Order or the Receiver's possession of and preservation, operation and
28  maintenance of the Property or the related litigation (provided that nothing in this

-12-

SMRH:409979353.1

Case 2:13-cv-08837-RSWL-FFM Document 1 Filed 11/27/13 Page 45 of 50 Page ID #:66  45

Case 2:13-cv-07207-RSWL-FFM Document 1 Filed 09/30/13 Page 24 of 30 Page ID #:28
Case 2:13-cv-06278-FFM Document 10 Filed 09/04/13 Page 13 of 14 Page ID #:242

1  Order prohibits or restrains Defendant from petitioning the Court with respect to any
2  act or omission undertaken or threatened by the Receiver or Plaintiff), and shall not:
3              a.      Interfere with the Receiver's collection of accounts
4  receivable included within the Property or the Receivership Estate.
5              b.      Dissipate, remove or secrete any inventory included within
6  the Property, including, but not limited to (i) contacting any payor of any accounts
7  receivable included within the Property or the Receivership Estate with respect to
8  the Property or Receivership Estate, (ii) demanding payment from any payor of any
9  accounts receivable included within the Property or the Receivership Estate,
10 (iii) cashing any check or other instrument used in paying any accounts receivable
11 included within the Property or the Receivership Estate, (iv) removing any funds
12 from any bank account located at any financial institution which constitutes
13 collections of accounts received or receivable included within the Property or the
14 Receivership Estate, and (v) refusing to allow or prohibiting, either directly or
15 indirectly, Plaintiff or the Receiver access to all books and records of Defendant or
16 its property manager(s).
17             c.      Interfere with Plaintiff or the Receiver in any way
18 connected with Plaintiff's enforcement of its rights related to the Property or the
19 Receivership Estate or the Receiver's protection of Plaintiff's interest in the
20 Property or the Receivership Estate.
21         12.    Transfer or Encumber the Property:  Defendant shall not expend,
22 disburse, transfer, assign, sell, convey, devise, pledge, mortgage, create a security
23 interest in, encumber, hypothecate, conceal or in any manner whatsoever deal in or
24 dispose of Defendant's books and records, or the whole or any part of the Property
25 or the Receivership Estate, including, but not limited to, accounts receivable to the
26 extent included therein, without prior Court Order.
27
28

-13-

SMRH:409979353.1

Case 2:13-cv-08837-RSWL-FFM   Document 1   Filed 11/27/13   Page 46 of 50   Page ID #:67    46

Case 2:13-cv-07207-RSWL-FFM   Document 1   Filed 09/30/13   Page 25 of 30   Page ID #:29
Case 2:13-cv-06278-FFM   Document 10   Filed 09/04/13   Page 14 of 14   Page ID #:243

1    **IT IS FURTHER ORDERED THAT** the following provisions shall
2  also apply to this receivership:

3    13.   Receiver's Final Report and Account: Not later than 60 days
4  after the receivership terminates, the Receiver shall file, serve, and set for hearing in
5  this Department his Final Report and Account. Notice must be given to all persons
6  of whom the Receiver is aware who have potential claims against the Receivership
7  Estate. The motion to approve the final report and accounting, and for discharge of
8  the Receiver, shall contain the following:

9    a.   A declaration under penalty of perjury by the Receiver.
10    b.   A summary of receivership accounting, which shall
11  include the total revenues received, the total expenditures identified and enumerated
12  by major categories, the net amount of any surplus or deficit, together with evidence
13  of necessary supporting facts.

14    c.   A declaration under penalty of perjury from the Plaintiff or
15  the Receiver, containing evidence of the basis for the termination of the receivership
16  and admissible evidence to support an order for the distribution of any surplus, or
17  payment of any deficit, in the Receivership Estate.

18    14.   Further Instructions: The parties hereto or the Receiver may at
19  any time apply to this Court for further or other instructions and for further powers
20  necessary to enable the Receiver to perform her duties properly.

21    **IT IS SO ORDERED.**

22

23  Dated: September 4, 2013

24    **/S/ FREDERICK F. MUMM**

25    FREDERICK F. MUMM
26    United States Magistrate Judge

27

28

-14-

SMRH:409979353.1

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the
CENTRAL DISTRICT OF CALIFONIA

TIGER BAY VILLAGE CORPORATION, a
Canadian Company,

    *Plaintiff(s)*

v.

YIHE CORPORATION, a California Corporation,
STEVEN CHEN, an individual, and DOES 1 to 10
inclusive,

    *Defendant(s)*

)
)
)
)
)
) Civil Action No. CV13-8837BD0 (Asx)
)
)
)
)
)

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*
    James Dennis Morgan, agent for service of process
    Yihe Corporation
    199 S. Los Robles Ave., #580
    Pasadena, CA 91101

    Steven Chen
    1222 S. 1st Ave.
    Arcadia, CA 91006
    A lawsuit has been filed against you.

    Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:
    Eudeen Y. Chang
    Monica Q. Vu
    Jeffer Mangels Butler & Mitchell LLP
    3 Park Plaza, Suite 1100, Irvine, CA 92614
    Telephone: (949) 623-7200

    If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Date:    NOV 2 7 2013

CLERK OF COURT

                        *Signature of Clerk or Deputy Clerk*


American LegalNet, Inc.
www.FormsWorkFlow.com

**ORIGINAL**

00/00/2013 12:13:21 FAX 2132499990    NATIONWIDE LEGAL                    1

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ )

Tiger Bay Village Corporation

**DEFENDANTS** ( Check box if you are representing yourself ☐ )

Yihe Corporation, Steven Chen

**(b) County of Residence of First Listed Plaintiff** Vancouver
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**County of Residence of First Listed Defendant** Los Angeles
*(IN U.S. PLAINTIFF CASES ONLY)*

**(c) Attorneys** *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.

Eudeen Y. Chang
Jeffer Mangels Butler & Mitchell, LLP
3 Park Plaza, Suite 1100, Irvine, CA 92614
Tel: (949) 623-7200; Email: echang@jmbm.com

**Attorneys** *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.

Michael G. McCollum
Foley and Lardner LLP
555 South Flower St., Suite 3500, Los Angeles, CA 90071
Tel: (213) 972-4742; Email mmccollum@foley.com

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☐ 3. Federal Question (U.S. Government Not a Party)

☒ 2. U.S. Government Defendant

☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding
☐ 2. Removed from State Court
☐ 3. Remanded from Appellate Court
☐ 4. Reinstated or Reopened
☐ 5. Transferred from Another District (Specify)
☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No    **MONEY DEMANDED IN COMPLAINT:** $ 4,000,000

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

1) Goods Sold and Delivered; 2) Open Book Account; 3) Breach of Contract; 4) Appointment of a Receiver and Injunctive Relief

**VII. NATURE OF SUIT** (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☒ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | ☐ 196 Franchise | ☐ 362 Personal Injury-Med Malpratice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| | **REAL PROPERTY** | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/ Accomodations | ☐ 740 Railway Labor Act | |
| | ☐ 220 Foreclosure | | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY:**    Case Number:

CV13-8837

CV-71 (11/13)                         CIVIL COVER SHEET                         Page 1 of 3


COPY

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII. VENUE:** Your answers to the questions below will determine the division of the Court to which this case will most likely be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| Question A:  Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| ☐ Yes   ☒ No | ☐ Los Angeles | Western |
| If "no," go to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| Question B:  Is the United States, or one of its agencies or employees, a party to this action? | If the United States, or one of its agencies or employees, is a party, is it: | | INITIAL DIVISION IN CACD IS: |
|---|---|---|---|
| | A PLAINTIFF? Then check the box below for the county in which the majority of DEFENDANTS reside. | A DEFENDANT? Then check the box below for the county in which the majority of PLAINTIFFS reside. | |
| ☐ Yes   ☒ No | ☐ Los Angeles | ☐ Los Angeles | Western |
| If "no," go to Question C. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☐ Ventura, Santa Barbara, or San Luis Obispo | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | ☐ Riverside or San Bernardino | Eastern |
| | ☐ Other | ☐ Other | Western |

| Question C: Location of plaintiffs, defendants, and claims? (Make only one selection per row) | A. Los Angeles County | B. Ventura, Santa Barbara, or San Luis Obispo Counties | C. Orange County | D. Riverside or San Bernardino Counties | E. Outside the Central District of California | F. Other |
|---|---|---|---|---|---|---|
| Indicate the location in which a majority of plaintiffs reside: | ☐ | ☐ | ☐ | ☐ | ☐ | ☒ |
| Indicate the location in which a majority of defendants reside: | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Indicate the location in which a majority of claims arose: | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |

| C.1. Is either of the following true? If so, check the one that applies: | C.2. Is either of the following true? If so, check the one that applies: |
|---|---|
| ☐ 2 or more answers in Column C | ☐ 2 or more answers in Column D |
| ☐ only 1 answer in Column C and no answers in Column D | ☐ only 1 answer in Column D and no answers in Column C |
| Your case will initially be assigned to the SOUTHERN DIVISION. Enter "Southern" in response to Question D, below. | Your case will initially be assigned to the EASTERN DIVISION. Enter "Eastern" in response to Question D, below. |
| If none applies, answer question C2 to the right.  ➡ | If none applies, go to the box below.  ⬇ |

| Your case will initially be assigned to the WESTERN DIVISION. Enter "Western" in response to Question D below. |
|---|

| Question D: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, or C above.  ➡ | Western |

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**IX(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?    ☒ NO    ☐ YES

If yes, list case number(s):

**IX(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?    ☐ NO    ☒ YES

If yes, list case number(s):    2:13-cv-06278-FMO (FFMx)

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)    ☒ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☒ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**X. SIGNATURE OF ATTORNEY**
**(OR SELF-REPRESENTED LITIGANT):**                                    DATE: November 27, 2013

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |