1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                   **CENTRAL DISTRICT OF CALIFORNIA**

10

11   Tiger Bay Village           )   CV 13-08837-RSWL-FFM(x)
     Corporation,                )
12                               )
                  Plaintiff,     )   **ORDER RE: PLAINTIFF**
13                               )   **TIGER BAY VILLAGE**
          v.                     )   **CORPORATION'S MOTION TO**
14                               )   **ENFORCE SETTLEMENT**
                                 )   **AGREEMENT** [25]
15                               )
     Yihe Corporation, Steven    )
16   Chen, and Does 1 to 10      )
     inclusive,                  )
17                               )
                                 )
18                Defendants.    )
                                 )
19   _____)

20        Currently before the Court is Plaintiff Tiger Bay

21   Village Corporation's ("Plaintiff") Motion to Enforce

22   Settlement Agreement [25].  The Court, having

23   considered all papers submitted pertaining to this

24   Motion, **NOW FINDS AND RULES AS FOLLOWS:** The Court

25   **GRANTS** Plaintiff's Motion.

26                        **I. BACKGROUND**

27   **A.   Factual Background**

28        Plaintiff is a corporation existing under the laws

                                  1

of Canada with its principal place of business in Vancouver, Canada.  Compl. ¶ 1.  Defendant Yihe Corporation ("Yihe") is a corporation organized in the state of California and conducting business in the County of Los Angeles.  Id. at ¶ 2.  Defendant Steven Chen ("Chen") is an individual residing in and conducting business in the County of Los Angeles and is an owner of Defendant Yihe.  Id. at ¶ 3.

Plaintiff initiated a breach-of-contract Action against Defendants in this Court on November 27, 2013 to compel payment of a loan in the sum of $4,000,000 following default by Defendant Yihe.  Id. at ¶ 15.  On December 31, 2013, Plaintiff entered into a settlement agreement ("Agreement") with Defendant Yihe, obligating Defendant Yihe to repay the $4,000,000 loan through ten monthly installments from February 7, 2014 to November 6, 2014.  Joint Stipulation to Dismissal Without Prejudice Ex. A ("Settlement Agreement"), § 2.2.

Plaintiff asserts that Defendant Yihe materially breached the Agreement by failing to make its $300,000 payment by May 12, 2014 and its $581,997.50 payment by June 9, 2014.  Mot. 5:4-7; Chang Decl. ¶ 5; Mary Chen Suppl. Decl. ¶ 2.  As such, Plaintiff seeks a judgment against Defendant in the amount of the full loan balance of $3,791,985 or in the amount of the missed payments to date.[1]  Id.

---

[1] Defendant Yihe's missed payments total $300,000 for the month of May and $581,997.50 for the month of June.  Mary Chen

Plaintiff also asserts that Defendant Yihe violated Section 2.7 of the Agreement, because upon Defendant Yihe's default, Defendant Yihe failed to produce adequate executive level financial documents when Plaintiff requested them. Id. at 4:12-15. Thus, Plaintiff also seeks a court order compelling Defendant Yihe to produce inventory reports, sales reports, profit and loss statements, and bank account statements on a monthly basis.

Alternatively, Plaintiff seeks an order compelling Defendant to comply with the terms of the Agreement and file monthly statements of compliance on the deadline for each payment. Id. at 10:19-22. Plaintiff further seeks $6,300 in attorneys' fees and costs in connection with the present Motion. Id. at 9:25-10:9.

**B.  Procedural Background**

On January 21, 2014, Plaintiff filed a Notice of Settlement Agreement [14] seeking dismissal of its Action against Defendants. Notice of Settlement 1:24-28. The Parties stipulated for dismissal without prejudice in accordance with Fed. R. Civ. P. 41(a)(1)(A)(ii) and requested that the Court retain jurisdiction of the matter for the purposes of enforcing the Agreement. On February 25, 2014, the Court issued an Order Granting Joint Stipulation for Dismissal Without Prejudice and Request for Court to

---

Suppl. Decl. ¶ 2.

1  Retain Jurisdiction to Enforce Settlement [23].

2      On May 27, 2014, Plaintiff filed the present Motion

3  to Enforce Settlement Agreement [25].  Defendant Yihe

4  filed an Opposition on June 3, 2014 [26], and Plaintiff

5  filed its Reply [27] on June 10, 2014.  On June 20,

6  2014, Plaintiff filed a Supplemental Declaration of

7  Chuan (Mary) Chen, indicating that Defendant Yihe also

8  missed its June payment in the amount of $581,997.50

9  [35].  This matter was set for hearing on June 24, 2014

10 and was taken under submission on June 19, 2014 [32].

11                    **II.  LEGAL STANDARD**

12     A district court may retain jurisdiction to enforce

13 a settlement agreement entered into by parties to an

14 action after the action has been dismissed.  <u>Hagestad</u>

15 <u>v. Tragesser</u>, 49 F.3d 1430, 1433 (9th Cir. 1995) ("When

16 the parties' compliance with the terms of the

17 settlement or the court's retention of jurisdiction

18 over the settlement are included in the terms of the

19 dismissal order . . . a breach of the agreement

20 violates that order and the court has ancillary

21 jurisdiction to enforce the agreement.") (citing

22 <u>Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511 U.S.

23 375, 381 (1994) (denying district court jurisdiction to

24 enforce a settlement agreement in the absence of a

25 provision retaining jurisdiction over the settlement

26 agreement)); <u>See also Wackeen v. Malis</u>, 97 Cal. App.

27 4th 429, 440 (Ct. App. 2002).

28     A settlement agreement is treated as a contract and

                            4

a party may file a motion to enforce a settlement agreement to obtain an order for damages or specific performance.  <u>TNT Mktg., Inc. v. Agresti</u>, 796 F.2d 276, 278 (9th Cir. 1986); <u>Vill. of Kaktovik v. Watt</u>, 689 F.2d 222, 230 (D.C. Cir. 1982) ("Each party agrees to extinguish those legal rights it sought to enforce through litigation in exchange for those rights secured by the contract.").  Enforcement of settlement agreements in federal diversity cases are governed by state contract law.  <u>Skilstaf, Inc. v. CVS Caremark Corp.</u>, 669 F.3d 1005, 1017–18 (9th Cir. 2012).

## III.  ANALYSIS

Here, Plaintiff asserts that Defendant Yihe totally breached the terms of the Agreement when it failed to make two out of the ten installment payments under the Agreement.  Mot. 7:13-20.  Plaintiff also alleges that Defendant Yihe breached the Agreement by failing to provide executive level financial documents upon Plaintiff's request.  Thus, Plaintiff seeks a judgment against Defendant Yihe in the sum of the outstanding balance of $3,791,985 or at least in the sum of missed payments, which currently totals $881,997.50.  Alternatively, Plaintiff seeks an order compelling Defendant Yihe's timely future payments in compliance with the Agreement and an order compelling Defendant Yihe to produce the requisite financial documents under the Agreement.  Plaintiff also seeks $6,300 in attorneys' fees from Defendant Yihe.

A district court retaining jurisdiction to enforce a settlement agreement has the power to summarily enforce the agreement if the parties do not dispute the contract's material terms or its binding nature on the parties. <u>Callie v. Near</u>, 829 F.2d 888, 890 (9th Cir. 1987).  To do so, a court may enter a judgment pursuant to the terms of the settlement agreement.  Cal. Code Civ. Proc. § 664.6; <u>Bill Poon & Co., Architects, Inc. v. Bafaiz</u>, No. C 07-5566 PJH, 2009 WL 688917, at *2-3 (N.D. Cal. Mar. 16, 2009).  In interpreting the agreement, a court must construe its language "literally and in a straightforward manner" and read it as it would a state-law contract.  <u>Agresti</u>, 765 F.2d at 278.  Further, "[t]he construction and enforcement of settlement agreements are governed by principles of local law which apply to the interpretation of contracts generally." <u>United Commercial Ins. Service, Inc. v. Paymaster Corp.</u>, 962 F.2d 853, 856-57 (9th Cir. 1992) (quoting <u>Jeff D. v. Andrus</u>, 899 F.2d 753, 759 (9th Cir. 1989)).

**1.** **<u>Defendant Yihe's Failure to Make Payments According to the Payment Schedule</u>**

As noted above, "[i]t is now well established that the trial court has power to summarily enforce on motion a settlement agreement entered into by the litigants while the litigation is pending before it." <u>In re City Equities Anaheim, Ltd.</u>, 22 F.3d 954, 957

(9th Cir. 1994) (quoting <u>Autera v. Robinson</u>, 419 F.2d 1197, 1200 (D.C. Cir. 1969)); <u>See also</u> <u>Dacanay v. Mendoza</u>, 573 F.2d 1075, 1078 (9th Cir. 1978). Additionally, to prevent additional litigation after parties enter into settlement agreements, California Code of Civil Procedure § 664.6 provides:

> If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case . . . the court, upon motion, may enter judgment pursuant to the terms of the settlement.  If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement.

Cal. Code. Civ. Proc. § 664.6; <u>See also</u> <u>Kilpatrick v. Beebe</u>, 219 Cal. App. 3d 1527, 1529 (Ct. App. 1990) ("[Section 664.6] . . . provide[s] a streamlined method for reducing a stipulated settlement to judgment.").

To be enforced, a settlement agreement must meet two requirements.  <u>Bill Poon</u>, 2009 WL 688917, at *2. First, it must be a complete agreement.  <u>Id.</u> (citing (citing <u>Maynard v. City of San Jose</u>, 37 F.3d 1396, 1401 (9th Cir. 1994); <u>Callie</u>, 829 F.2d at 890)).  Second, both parties must have either agreed to the terms of the settlement or authorized their respective counsel

7

to settle the dispute.  Id. (citing Harrop v. Western
Airlines, Inc., 550 F.2d 1143, 1144-45 (9th Cir.
1977)).  Thus, if parties have agreed to be bound by a
complete settlement agreement, a court may enter a
judgment pursuant to the agreement's terms.  Callie,
829 F.2d at 890.

     Here, the Parties do not dispute the existence or
material terms of the Agreement.  In their briefing
papers, the Parties do not appear to dispute the
Agreement's terms obligating Defendant Yihe to pay off
the remaining balance, nor do they dispute that they
were willing to be bound by the Agreement's terms.  See
Bill Poon, 2009 WL 688917, at *3 (finding a settlement
agreement enforceable where the parties did not dispute
the contract's material terms, did not identify any
omitted terms, and did not dispute their intent to be
bound by the agreement).  Thus, the Court finds that
the Parties have entered into an enforceable agreement.

     As for the material terms of the Agreement, the
Court concludes that all of the material terms are
included in the Agreement.  Under the terms of the
Agreement, the Parties have stipulated to a dismissal
without prejudice upon voluntary settlement pursuant to
Fed. R. Civ. P. 41(a)(1)(A)(ii).  Section 2.3 of the
Agreement provides:

     Upon execution of this Agreement, Plaintiff
     shall withdraw its Objections to the Discharge

of the receiver in the Related Action. The
Parties shall also stipulate to a dismissal
without prejudice of the Action incorporating
the terms of this Agreement as well as
conditioning any such dismissal on the Court's
agreement or Order to retain jurisdiction.

Settlement Agreement, § 2.3. Section 2.2 of the
Agreement states, "Defendant's failure to make one or
more of the [payments] . . . constitutes a material
breach of this Agreement, entitling Plaintiff the right
to seek immediate relief, including . . . Court
enforcement of this Agreement." Id. § 2.2.

Here, Plaintiff presents evidence that Defendant
Yihe has failed to tender payments according to the
Agreement's terms, and Defendant Yihe does not dispute
that certain payments were not made. Mary Chen Decl. ¶
3; Mary Chen Suppl. Decl. ¶ 2. Therefore, the Court
finds that Defendant Yihe failed to make payments
according to the Agreement's terms and that Defendant
Yihe is in material breach of the Agreement. Id.

Because the Parties in the instant Action have
entered into an enforceable agreement, the Court may
enter a judgment pursuant to the Agreement's terms.
Callie, 829 F.2d at 890; See also Bill Poon, 2009 WL
688917, at *2-3 (judgment entered according to the
terms of a settlement agreement following the
defendant's failure to make timely payments). The

Agreement's payment terms obligate Defendant Yihe to pay off the remaining balance according to the following schedule:

| Dates Calculated From | Payment Amount |
|---|---|
| 30 Days from 1/10/14[2] (February payment) | $200,000 |
| 60 Days from 1/10/14 (March payment) | $215,000 |
| 90 Days from 1/10/14 (April payment) | $230,000 |
| 120 Days from 1/10/14 (May payment) | $300,000 |
| 150 Days from 1/10/14 (June payment) | $581,997.50 |
| 180 Days from 1/10/14 (July payment) | $581,997.50 |
| 210 Days from 1/10/14 (August payment) | $581,997.50 |
| 240 Days from 1/10/14 (September payment) | $581,997.50 |
| 270 Days from 1/10/14 (October payment) | $581,997.50 |
| 300 Days from 1/10/14 (November payment) | $581,997.50 |

Settlement Agreement, § 2.2.  Thus, Plaintiff is entitled to a judgment in the sum of Defendant Yihe's missed May and June payments, totaling $881,997.50, as well as in the amount of Defendant Yihe's subsequent payments as they become due under the Agreement's

---

[2] The Agreement provided that the first payment and all payments thereafter would be calculated from the date of discharge of the Receiver.  That occurred on January 10, 2014. Chang Decl. ¶ 4.

10

1 | payment schedule.[3]

2 |     Defendant Yihe argues that a judgment in

3 | Plaintiff's favor is not appropriate because Defendant

4 | Yihe was discharged from performance under the

5 | Agreement following a material breach by Plaintiff's

6 | failure to renegotiate the payment schedule.  Opp'n

7 | 4:4-12.  The section to which Defendant Yihe refers,

8 | Section 2.7, states:

9 |     Within twenty-five days of the Date of

10 |     Discharge, and upon Defendant providing audited,

11 |     objective proof that its financial condition and

12 |     cash flow prevents it from making the payments

13 |     set forth in Section 2.2, Defendant may request

14 |     that the Parties meet and renegotiate in good

15 |     faith the payment schedule.

16 | However, the Court finds Defendant Yihe's assertion

17 | unpersuasive.  Although Section 2.7 of the Agreement

18 | provides Defendant the opportunity to request that the

19 | Parties renegotiate the payment terms, it conditions

20 |

21 | 

22 |     [3] Plaintiff argues that it is entitled to the full remaining balance of $3,791,985.00 because Defendant Yihe has totally

23 | breached the Agreement by anticipatory repudiation.  However, as the Court chooses to enforce the Agreement pursuant to the

24 | payment terms of the Agreement, the Court declines to address anticipatory breach.  Even if the Court were to address this

25 | issue, it would likely deny Plaintiff's request for the immediate lump sum balance of $3,791,985.00, as California law supports

26 | that a total breach by anticipatory repudiation does not apply to a bilateral contract that has become unilateral by a party's

27 | complete performance.  See e.g., Minor v. Minor, 184 Cal. App. 2d 118, 121-23 (Ct. App. 1960).

28 |

the request for renegotiation on Defendant first providing "audited, objective proof that its financial condition and cash flow prevents it from making the payments." Settlement Agreement, § 2.7. Furthermore, renegotiation can only occur within twenty-five days from the date of the receiver's discharge on January 10, 2014. Id.; McCollum Decl. ¶ 5.

Here, Plaintiff provides a declaration that Defendant Yihe did not submit the audited proof that its financial condition and cash flow prevented it from making the payments prior to the January 10, 2014 deadline. Chang Decl. ¶ 9. In fact, Defendant Yihe's documents show that Defendant Yihe indicated that it could not provide the audited materials until late February 2014 or early March 2014, well beyond the twenty-five days from the date of the receiver's discharge. McCollum Decl. Ex. A, at 1. Because Defendant Yihe never provided the audited proof, Plaintiff was never obligated to renegotiate the payment schedule. See Chang Decl. ¶ 9. Moreover, Defendant Yihe's argument that Plaintiff's failure to respond to Defendant Yihe's auditor prevented timely production of audited materials is unavailing because Defendant Yihe's auditor did not seek information from Plaintiff until *after* the twenty-five-day window for renegotiation had passed. Chang Suppl. Decl. ¶ 2, Ex. A, at 1. Thus, Plaintiff could not have breached the

1   Agreement by failing to renegotiate because it was
2   never under obligation to do so.  As such, Defendant
3   Yihe has not been discharged from its duty to pay.
4   Thus, the Court **GRANTS** Plaintiff's Motion and enters a
5   judgment against Defendant Yihe in the sum of
6   $881,997.50 for the missed May and June payments as
7   well as in the sum of each payment as they become due
8   pursuant to the Agreement's terms.
9   **B.  Financial Documents**
10      Plaintiff also seeks an order compelling Defendant
11  Yihe to produce executive level financial information
12  and documents in accordance with Section 2.7 of the
13  Agreement.  Defendant Yihe still has not provided this
14  information to notify Plaintiff of its financial
15  circumstances preventing it from making prompt
16  payments.  Chang Suppl. Decl. ¶¶ 3-4.
17      Settlement agreements are read as a whole and an
18  agreement's provisions should be interpreted in light
19  of parties' intentions.  Walker v. Gomez, 609 F. Supp.
20  2d 1149, 1154 (S.D. Cal. 2009) (quoting Royal Thrift &
21  Loan Co. v. Cnty. Escrow, Inc., 123 Cal. App. 4th 24,
22  45 (Ct. App. 2004) ("The paramount rule governing the
23  interpretation of contracts is to give effect to the
24  mutual intention of the parties as it existed at the
25  time of contracting, so far as it is ascertainable and
26  lawful."); See also Trans World Airlines, 713 F.2d at
27  321.
28                         13

Section 2.7 of the Agreement outlines the process by which Defendant Yihe may proceed in the event that it cannot make the agreed payments.  Settlement Agreement, § 2.7.  As noted above, this section contains provisions that protect Defendant Yihe from defaulting, allowing it to request a renegotiation of the payment schedule upon proof that it cannot conform to the agreed payment amounts and times.  Id.  However, if the Parties do not renegotiate the payment schedule and Defendant Yihe subsequently defaults, Section 2.7 *also* provides protections to Plaintiff, allowing Plaintiff to understand the reasons for Defendant Yihe's default by granting Plaintiff "full access" to Defendant Yihe's financial documents "until the full amount of $4,436,985.00 is paid."  Id.  Thus, the provision's purpose for compelling disclosure of these documents is to allow Plaintiff to understand the circumstances giving rise to Defendant Yihe's default.

Here, there is no evidence that suggests Plaintiff has sufficient knowledge of Defendant Yihe's financial circumstances based on the financial information to which it currently has access.  Section 2.7 obligates Defendant Yihe to grant "full access to executive level financial information and documents upon 48 hours' request until the full amount . . . is paid."  So far, Defendant has provided inventory lists, two bank statements, and a list of debits and credits, which are

14

insufficient to give Plaintiff a full understanding of Defendant Yihe's financial circumstances.  Chang Suppl. Decl. ¶¶ 3-4.  While Defendant Yihe has provided inventory lists, such information is insufficient to satisfy the executive level financial information to which Plaintiff is entitled under Section 2.7. Settlement Agreement, § 2.6.  This is so because the Agreement already obligates Defendant Yihe to provide inventory lists following the Receiver's discharge, pursuant to Section 2.6.  Id. ("Within 10 days from the Date of Discharge, Defendant shall provide to Plaintiff a list of its current seafood inventory and their location.").

Although the purpose of the provision in Section 2.7 is to inform Plaintiff about the reasons for Defendant Yihe's default, Plaintiff alleges that it still does not have a full picture of Defendant Yihe's financial situation.  Chang Suppl. Decl. ¶ 4.  Thus, the Court finds that Defendant Yihe is in breach of Section 2.7 of the Agreement because the two bank statements and the list of debits and credits do not constitute "full access" according to the provision. See Trans World Airlines, 713 F.2d at 321.

Further, the Court is not persuaded by Defendant Yihe's contention that Plaintiff's failure to respond to its auditors' e-mails prevented it from providing the requisite financial information.  Opp'n 5:21-6:2.

Plaintiff submits that its requests were never limited to audited financial documents, and asked for executive level documentation as provided under the Agreement. Chang Suppl. Decl. ¶ 3 Ex. B, at 1.  Furthermore, Defendant Yihe's assertion that Plaintiff's actions prevented Defendant from submitting *audited* information is irrelevant to the provision requiring that Defendant provide *executive level* financial information to Plaintiff.  As noted above, while Section 2.7 of the Agreement obligated Defendant Yihe to provide audited financial information, that was for the purpose of renegotiating the payment terms.  Rather, Section 2.7 of the Agreement *also* provides that, "[i]f the Defendant defaults under this Agreement, Defendant shall grant Plaintiff full access to executive level financial information and documents . . ."

Thus, the Court finds that Defendant Yihe is in breach of the Agreement as it failed to grant Plaintiff full access to its financial information.  Accordingly, the Court **GRANTS** Plaintiff's Motion and orders Defendant Yihe to produce executive level financial documents, including monthly profit-and-loss statements, sales reports, bank account statements, and inventory reports.

## C.  **Attorneys' Fees**

Plaintiff requests attorneys' fees in the amount of $6,300 pursuant to Section 4.4 of the Agreement.

Section 4.4 of the Settlement Agreement permits the prevailing party in an action to enforce the Agreement to recover costs associated with the action, including attorneys' fees.  Section 4.4 states, in relevant part:

> In any action between the Parties seeking enforcement, redress of untruthful representation or warranty, or interpretation of any of the terms or provisions of this Agreement, the prevailing Party in such action shall be entitled to recover from the other Party its reasonable attorneys' fees and other actual expenses in connection with such action or proceeding.

On balance, the Court holds that the instant Motion is an action covered under Section 4.4 for which Plaintiff should be awarded attorneys' fees.

Attorneys' fees clauses should be read "literally," and words must be given their ordinary or usual legal meanings. Agresti, 796 F.2d at 278; See also Reudy v. Clear Channel Outdoors, Inc., 693 F. Supp. 2d 1091 (N.D. Cal Feb. 2, 2010); Trans World Airlines, 713 F.2d at 321.  Additionally, Cal. Civ. Code § 1717 permits courts to award reasonable attorneys' fees where parties to a contract have agreed to award attorneys' fees and costs to the prevailing party in an enforcement action.  Cal. Civ. Code § 1717; See Baugh v. Garl, 137 Cal. App. 4th 737, 742 (Ct. App. 2006);

1  See also Douglas E. Barnhart, Inc. v. CMC Fabricators,

2  Inc., 211 Cal. App. 4th 230, 241-42 (Ct. App. 2012)

3  (awarding attorneys' fees in contract actions under §

4  1717 if "(1) the action . . . arises out of, is based

5  upon, or relates to an agreement by seeking to define

6  or interpret its terms or to determine or enforce a

7  party's rights or duties under the agreement; and (2)

8  the agreement contains an attorney fees clause.").

9       The instant Motion was brought by Plaintiff to

10 recover Defendant Yihe's missed payments and enforce

11 the payment schedule, which falls within the ordinary

12 definition of an action "seeking enforcement."

13 Agresti, 796 F.2d at 278.  As such, Section 4.4 applies

14 to the instant Motion.  Further, as the Court finds

15 that Plaintiff is entitled to missed payments and

16 financial documents, the Court finds that Plaintiff is

17 the prevailing party in this Action and should be

18 awarded attorneys' fees and associated costs.

19 Settlement Agreement, § 4.4.

20      The Court is not persuaded by Defendant Yihe's

21 assertion that the instant Motion was not necessary but

22 for Plaintiff's failure to respond to Defendant Yihe's

23 requests for information.  Opp'n 5:12-20.  Plaintiff

24 has demonstrated that Defendant Yihe did not seek input

25 from Plaintiff for producing audited financial reports

26 until two months after the deadline for providing the

27 information.  Chang Suppl. Decl. ¶ 3.  Thus, the Court

28                          18

need not consider Defendant Yihe's contention.   The
Court instead concludes that the instant Motion was
filed to enforce the terms of the Agreement and provide
relief to Plaintiff from Defendant Yihe's default.

Because the Court finds that Plaintiff is entitled
to attorneys' fees under Section 4.4 of the Agreement,
the Court next determines the amount to which Plaintiff
is entitled.

A "trial court has broad discretion to determine
the amount of a reasonable fee, and the award of such
fees is governed by equitable principles." Ellis v.
Toshiba Am. Info. Sys., 218 Cal. App. 4th 853, 881 (Ct.
App. 2013).   If the court finds an award of attorneys'
fees is appropriate, then the court applies the
"lodestar" method for calculating fees: the number of
hours reasonably expended on the litigation multiplied
by a reasonable hourly rate.   Hensley v. Eckerhart, 461
U.S. 424, 433 (1983).   "In determining reasonable
hours, counsel bears the burden of submitting detailed
time records justifying the hours claimed to have been
expended." Chalmers v. City of L.A., 796 F.2d 1205,
1210 (9th Cir. 1985) (citing Hensley, 461 U.S. at 433).
The reasonable hourly rate corresponds to the
prevailing market rate in the relevant community,
considering the experience, skill, and reputation of
the attorney in question.   Id.

Then, starting with the lodestar figure, the Court

can make adjustments to the figure in light of factors
expressed in Kerr v. Screen Extras Guild, Inc., 526
F.2d 67, 69-70 (9th Cir. 1975).  These factors are: (1)
the time and labor required, (2) the novelty and
difficulty of the questions involved, (3) the skill
requisite to perform the legal service properly, (4)
the preclusion of other employment by the attorney due
to acceptance of the case, (5) the customary fee, (6)
time limitations imposed by the client or the
circumstances, (7) the amount involved and the results
obtained, (8) the experience, reputation, and ability
of the attorneys, (9) the 'undesirability' of the case,
(10) the nature and length of the professional
relationship with the client, and (11) awards in
similar cases.  Kerr, 526 F.2d at 69-70.

        Plaintiff seeks an award of $6,300 in attorneys'
fees for twelve hours expended at an hourly rate of
$525.  Chang Decl. ¶ 11.  The Court first addresses the
reasonableness of the hourly rate of $525.  Affidavits
regarding prevailing rates are satisfactory evidence of
prevailing market rates.  See, e.g., Welch v. Metro.
Life Ins. Co., 480 F.3d 942, 947 (9th Cir. 2007); see
also United Steelworkers of Am. v. Phelps Dodge Corp.,
896 F.2d 403, 407 (9th Cir. 1990) ("Affidavits of the
plaintiffs' attorney and other attorneys regarding
prevailing fees in the community, and rate
determinations in other cases, particularly those

                              20

setting a rate for the plaintiffs' attorney, are
satisfactory evidence of the prevailing market rate.").
Here, to prove the reasonableness of the hourly rate of
$525, Plaintiff submits a declaration from Eudeen
Chang, Plaintiff's counsel, who declares that he has
been practicing law for over thirteen years and that
his hourly rate for the matter is $525, which he
declares is customary and reasonable in light of his
experience. Id. Further, Defendant does not dispute
Plaintiff's counsel's hourly rate, nor does it provide
evidence or support of its own regarding legal rates in
the community. In light of the declaration submitted
by Plaintiff's counsel and Defendant's failure to
oppose the market rate, the Court finds that an hourly
rate of $525 is reasonable.

The Court then turns to number of hours reasonably
expended on the litigation. Here, Plaintiff's counsel
submits a declaration that he spent at least six hours
researching and preparing the moving papers, as well as
conferring with his client and Mr. McCollum,
Defendant's counsel. Chang Decl. ¶ 11. Plaintiff's
counsel also indicates that he anticipates that he will
spend at least four hours reviewing Defendant's
Opposition to the Motion and preparing a response to
the same. Id. Finally, Plaintiff's counsel states
that he anticipates incurring an additional two hours
of time traveling to and from the Court to attend

1   hearing on the Motion.  Id.  As a result, Plaintiff's

2   counsel states that he will have incurred a total of at

3   least $6,300 ($525 times twelve hours) in bringing the

4   Motion.  Id.

5        The Court has discretion in determining the number

6   of hours reasonably expended on a case.  Rosenfeld v.

7   U.S. Dept. of Justice, 903 F. Supp. 2d 859, 872 (N.D.

8   Cal. 2012) (citing Chalmers, 796 F.2d at 1212).  "The

9   fee applicant bears the burden of 'documenting the

10  appropriate hours expended' in the litigation and

11  therefore must 'submit evidence supporting the hours

12  worked.'"  Id. (citing Hensley, 461 U.S. at 433).  As

13  such, the party opposing the fee application has the

14  burden of rebutting the accuracy and reasonableness of

15  any hours charged.  Gates v. Deukmejian , 987 F.2d

16  1392, 1397-98 (9th Cir. 1992).

17       On balance, the Court finds that the amount of six

18  hours researching and preparing the moving papers is

19  reasonable.  Plaintiff's counsel submitted a

20  declaration indicating that he spent at least six hours

21  preparing the Motion, which involved researching and

22  preparing the moving papers, as well as conferring with

23  his client and Mr. McCollum, Defendant's counsel.

24  While the declaration does not specifically describe

25  the type of work for each hour billed, it is Defendant,

26  not Plaintiff, who has the burden of rebutting the

27  accuracy and reasonableness of the hours charged.

28                          22

Plaintiff must only document the appropriate hours
expended in the action and submit evidence in support
of those hours worked, which it did here.  See Paulson
v. City of San Diego, No. 89-0820GT(LSP), 2007 WL
1756030, at *3 (S.D. Cal. June 15, 2007) ("Declarations
of the attorney establishing the number of hours worked
and the hourly rate is sufficient to support an award
of attorney's fees"); See also Syers Props. III, Inc.
v. Rankin, 226 Cal. App. 4th 691, 698-99 (Ct. App.
2014).  Here, as Defendant has failed to submit any
argument or evidence challenging the reasonableness of
these hours, the Court finds that the six hours spent
researching and preparing the moving papers is
reasonable.

However, the Court finds that Plaintiff's request
for fees incurred with respect to reviewing Defendant's
Opposition to the Motion and preparing a response is
not reasonable.  Plaintiff's counsel submits a
declaration that he "anticipate[s] that [he] will spend
at least four hours" reviewing the Opposition and
preparing a response; however, the Court has no support
that Plaintiff's counsel actually spent four hours
engaging in those tasks.  Further, the Court finds that
the request for fees in connection with the two hours
of time traveling to and from the Court to attend
hearing on the Motion is unreasonable, because instant
Motion was taken under submission and no hearing

1   occurred.  Dkt. # 34.

2       From this, the Court derives a lodestar figure of

3   $3,150.

4       The Court then examines the <u>Kerr</u> factors to

5   determine whether the lodestar figure should be

6   adjusted.  Only in "exceptional cases" may a district

7   court adjust the "presumptively reasonable" lodestar

8   figure based on <u>Kerr</u> factors that have not been

9   subsumed in the lodestar calculation.  <u>Cunningham v.</u>

10  <u>Cnty. of Los Angeles</u>, 879 F.2d 481, 488 (9th Cir.

11  1988); <u>see also</u> <u>Van Gerwen v. Guarantee Mut. Life Co.</u>,

12  214 F.3d 1041, 1045 (9th Cir. 2000) ("The lodestar

13  amount is presumptively the reasonable fee amount, and

14  thus a multiplier may be used to adjust the lodestar

15  amount upward or downward only in 'rare' and

16  'exceptional' cases . . . .").  Here, however, the

17  Parties do not assert that any facts relevant under

18  those factors entitle them to an upward or downward

19  multiplier to the traditional lodestar calculation.

20  Because the Parties offer no facts or case law to

21  support why this would qualify as a "rare or

22  exceptional case," the Court does not adjust the

23  lodestar figure of $3,150.

24      Accordingly, the Court **GRANTS** Plaintiff's request

25  for attorneys' fees and awards $3,150 to Plaintiff.

26                    **IV.   CONCLUSION**

27      Based on the foregoing reasons, the Court **GRANTS**

28                         24

Plaintiff's Motion to Enforce Settlement and enters a judgment in Plaintiff's favor in the amount of $881,997.50, representing the missed May and June 2014 payments, as well as the sum of each future payment, as they become due, pursuant to the Agreement's terms. Furthermore, the Court **GRANTS** Plaintiff's request for attorneys' fees in the amount of $3,150.  The Court also **ORDERS** Defendant Yihe to provide executive level financial information and documents to Plaintiff on a monthly basis until the full settlement balance has been paid.

**IT IS SO ORDERED.**

DATED: July 18, 2014

RONALD S.W. LEW
**HONORABLE RONALD S.W. LEW**
Senior U.S. District Judge